**5**
**LAW OFFICES OF GABRIEL LIBERMAN, APC**
Gabriel E. Liberman (SBN 303010)
Gabe@4851111.com
2033 Howe Avenue, Suite 140
Sacramento, California 95825
Telephone:    (916) 485-1111
Facsimile:    (916) 485-1111

Attorney for Debtor

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
SACRAMENTO DIVISION

| | |
|---|---|
| In re<br><br>**HENDRICKSON TRUCK LINES, INC.**<br><br>FEIN: 47-1616076<br><br><br><br>Debtor. | Case No. 2019-27396-B-11<br>DCN:  GEL-1<br><br>Date:       January 7, 2020<br>Time:       2:00 p.m.<br>Location:  501 I Street, 6th floor,<br>                 Courtroom 32; Dept. B.<br>                 Sacramento, CA<br><br>Judge:      Honorable Christopher D. Jaime |

**DECLARATION OF ALBAN LANG IN SUPPORT OF DEBTOR'S RESPONSE TO OBJECTION OF THE UNITED STATES TRUSTEE TO FINAL APPROVAL OF DEBTOR'S MOTION FOR DEBTOR IN POSSESSION FINANCING**

I, Alban Lang, declare as follows:

1.  I am over the age of 18 and am mentally competent and I make this declaration in support of *Debtor's Response to Objection of the United States Trustee to Final Approval of Debtor's Motion for Debtor in Possession Financing;*

2.  I am the vice president, chief financial officer and secretary of HENDRICKSON TRUCK LINES, INC., the debtor and debtor-in-possession ("Debtor");

3.  In my capacity as Debtor's vice president, chief financial officer and secretary, I am familiar with Debtor's daily business, operations, and financial affairs. Except as otherwise indicated, all

of the facts set forth in this Declaration are based upon my personal knowledge of Debtor's operations and finances, information learned from my review of relevant documents, and information supplied to me by other members of Debtor's management and Debtor's business and legal advisors. If called upon to testify as to the content of this Declaration, I could and would do so.

4. On December 24, 2019, Debtor filed the balance of the required schedules and statements, including Schedule A/B, Schedule D, Schedule E/F, and the Statement of Financial Affairs. (See Dkt No. 60).

5. Debtor agrees to provide similar language in the final order, with the UST signing off as to form and content, that the proceeds of Avoidance Actions shall not be subject to any super-priority claim. Proposed language for the final order:

> "The definition of Collateral of the Agreement, subparagraph (vi) is modified to add that all avoidance actions under chapter 5 of the Bankruptcy Code ("Avoidance Actions") of the estate is an additional exception. For the avoidance of doubt, TAB shall not have a lien on Avoidance Actions, and proceeds of Avoidance Actions shall not be subject to TAB's super-priority claim under 11 U.S.C. § 363(c)(1)."

6. Debtor believes the Agreement and the provisions at issue (Items a-j in Debtor's Response) should be approved or modified to some degree that allows Debtor and TAB Bank to conduct business while it seeks to reorganize its debt obligations and exit the bankruptcy as quickly and efficiently as possible. Debtor believes the Agreement is not only within Debtor's preferred business judgment but is necessary to avoid serious harm to the estate.

7. As to the provision regarding TAB's ability to "change the Administration Discount applicable to existing or future Purchased Accounts at any time, after giving Seller thirty (30) days prior written notice." Debtor believes this provision is necessary in order to conduct business with TAB Bank and flexibility of addressing account issues.

8. As to the provision regarding TAB's ability to "change the Discount Fee Rate applicable to

existing or future Purchased Accounts at any time, after giving Seller thirty (30) days prior written notice." Debtor believes this provision is necessary in order to conduct business with TAB Bank and flexibility of addressing account issues.

9. As to the provision regarding TAB's ability to change the "Maximum Amount" of the DIP financing "either temporarily or permanently, to accommodate the purchase of any Eligible Account, as Purchaser deems desirable in its sole discretion." Debtor believes the current financing amount at $3 million is sufficient to fund its financing needs during the Chapter 11 Case, though would agree to provide language in the final order that would require Debtor and TAB Bank to seek prior court approval before modifying the financing amount.

10. As to the provision regarding TAB's ability to charge an "Early Termination Fee" if the Debtor prepays the DIP obligations. Debtor responds that it has enjoyed a long and profitable relationship with TAB Bank and does not foresee itself in discontinuing or terminating its relationship. Debtor does not oppose the provision as it believes it is within its sound business judgment to enter into this Agreement and potential risks of incurring additional fees.

11. As to the following provisions, Debtor does not oppose these provisions and believes they are necessary to continue its on-going and post-petition financing relationship with TAB Bank and afforded protections in order to receive its financing:

    a. Section 11 of the DIP Financing Agreement which authorizes TAB to (i) "effect collection of or other realization upon the Accounts and other Collateral", and (ii) after an Event of Default "change the address for delivery of mail to Seller and to receive and open mail addressed to Seller."

    b. TAB may declare an Event of Default if it "for any reason, in good faith, deems itself insecure with respect to the prospect of repayment or performance of the Obligations."

      c.    Section 19 of the DIP Financing Agreement suggests that disputes may be resolved in the Bankruptcy Court, only if TAB "so elects."

12. As to Section 20 of the DIP Financing Agreement which includes broad indemnification and attorney's fee provisions in favor of TAB. Debtor joins in TAB Bank's response to the attorney fees and believes language in the final order to include a reasonableness requirement.

13. Debtor requires the total financing amount of $3M, as the amount of its outstanding receivables is actually around $3M. As of the petition date, Debtor's receivables to TAB Bank were around $3.1M (see Dkt 60). Debtor's budget shows actual sales for the month, around $1.6M, though most of its customers pay its invoices beyond 30 days, with some at 90 days. This causes the higher account receivable being outstanding and flowing to the proceeding months. Debtor believes the requested financing is necessary to effectively operate its business.

14. As to the provision regarding the Minimum Monthly Fee that may be in addition to other fees charged under the DIP financing agreement. Debtor believes this provision is necessary in order to conduct business with TAB Bank and has determined the fees it would subject to are reasonable and within its sound business judgment to incur.

15. Debtor agrees to language in the final order regarding administrative fees as follows:

> "Debtor is authorized to use any budget surplus to pay allowed administrative expenses as approved and allowed by the Bankruptcy Court pursuant to Sections 330 and 331 of the Bankruptcy Code and Quarterly fees owed to the United States Trustee. In the event an Official Committee of Unsecured Creditors ("Committee") is appointed, the Committee shall not use the retainer funds supplied hereunder to fund litigation directly adverse to the interest of TAB Bank."

///

///

///

///

16. Debtor and TAB Bank are not seeking a priming lien. Debtor agrees to provide language in the final order as follows: "No priming liens shall be granted under 11 U.S.C. § 364(d)."

I declare under penalty of perjury under the laws of the State of California that the foregoing statements in this declaration are true and correct.

DATED this 31st day of December, 2019

/s/ Alban Lang
Alban Lang
Vice President of Debtor