**4**

**LAW OFFICES OF GABRIEL LIBERMAN, APC**
Gabriel E. Liberman (SBN 303010)
Gabe@4851111.com
1545 River Park Drive, Suite 530
Sacramento, California 95815
Telephone:     (916) 485-1111
Facsimile:     (916) 485-1111

Attorney for Debtor

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
SACRAMENTO DIVISION

| | |
|---|---|
| In re | Case No. 2019-27396-B-11 |
| | DCN: TGF-001 |
| **HENDRICKSON TRUCK LINES, INC.** | |
| | Date:     March 17, 2020 |
| FEIN: 47-1616076 | Time:     2:00 p.m. |
| | Location:  501 I Street, 6th floor, |
| | Courtroom ; |
| | Sacramento, CA |
| Debtor. | Judge:     Honorable Christopher D. Jaime |

**DECLARATION OF ALBAN LANG IN SUPPORT OF DEBTOR'S OPPOSITION TO AMENDED 19th CAPITAL GROUP, LLC'S MOTION FOR RELIEF FROM THE AUTOMATIC STAY**

1. I am over the age of 18 and am mentally competent and I make this declaration in support of DEBTOR'S OPPOSITION TO AMENDED 19th CAPITAL GROUP, LLC'S MOTION FOR RELIEF FROM THE AUTOMATIC STAY

2. I am the vice president, chief financial officer and secretary of HENDRICKSON TRUCK LINES, INC., the debtor and debtor-in-possession ("Debtor")

3. In my capacity as Debtor's vice president, chief financial officer and secretary, I am familiar with Debtor's daily business, operations, and financial affairs. Except as otherwise indicated all of the facts set forth in this Declaration are based upon my personal knowledge of Debtor's operations and finances, information learned from my review of relevant

documents, and information supplied to me by other members of Debtor's management and Debtor's business and legal advisors. If called upon to testify as to the content of this Declaration, I could and would do so.

4. The Debtor operates a small, family-owned over-the-road interstate trucking company which serves ten (10) Western states and has 124 employees. Debtor does not own any of its semi-trucks and entered into a master lease and subsequent amendments with Creditor beginning in November 2018 through May 2019. In total, Debtor leased 89 semi-trucks with monthly leased payments of $132,950.00.

5. Beginning in 2019, Debtor experienced unanticipated maintenance issues with 25 of the new leased trucks, with issues beyond normal maintenance and service of trucks at their current age and mileage. Many of the trucks were not road worthy and broke down right after they were put in service and the combination of repairs to make them operable along with the downtime, immediately affected Debtor's cash flow, which was a significant reason Debtor had to file this bankruptcy. Debtor estimates the defective trucks costs the Debtor $863,963 broken down as follows: (1) Cost to repair trucks: $181,963; (2) Towing fees: $12,000; and (3) Lost revenue and downtime: $606,250.00. Debtors attempts to resolve these issues prior the bankruptcy file were unsuccessful.

6. Debtor does not dispute the factual statements in Creditor's motion regarding the execution of the master lease and subsequent amendments entered thereafter, however Debtor does dispute the allegations that Debtor has failed to cooperate with Creditor regarding GPS tracking units that have become inoperable, which is discussed in more details below.

7. Debtor's intentions were never to delay payments to Creditor following the filing of this case, but was hopeful on restructuring the lease to a purchase agreement and reduction in the monthly payments. Unforeseen events caused Debtor's cash flow to tighten following the

bankruptcy filing including its insurance carriers accelerating insurance premiums for two months, due to the bankruptcy filing, requesting immediate payment of $142,996.00. Debtor was not prepared for this immediate expense. In addition, Debtor's year end licensing fees of $166,760.00 came due, which it did anticipate. Debtor's lender TAB Bank has also taken a conservative approach to release of its account receivables and previously would release up to 90% of collected receivables including receivables that fell over the 90-day aging mark. Now, they are holding back on these 90+ days receivables, which they have a contractual right to-do so, but this compounded Debtor's cash flow issues in its first 60 days. As of the Petition Date, TAB Bank was holding back $36,518.08 and as of February 18th it was holding back $226,116.70, an increase of $189,598.62.

8. Debtor is working toward a consensual plan of reorganization and estimates to have its disclosure statement and plan filed by the end of the week. Since of the filing the case Debtor has been actively pursuing new contracts and was recently awarded new lanes with UPS and ABF, with additional income of $57,929.93 starting February 1st. Debtor has pending bids with FedEx Ground and anticipates being awarded those contracts based on its bid rate and prior historical performance with FedEx and projects an additional income of $66,247.45 to start in April, 2020. Debtor has the capacity for the additional work and will not require additional equipment or employees. If Creditor were to prevail in its motion it would result in the closure of a profitable business, as it would have no means to continue to operate without use of Creditor's collateral. Debtor has offered to start monthly payments at the pre-petition contractual payments of $132,950.00, starting in March and providing pre and post-petition arrears in its plan of reorganization.

9. Following the filing of this case, Debtor became aware there were issues with Creditor's GPS tracking units. Prior to the case being filed, Debtor worked closely with Creditor on

these issues and from time to time would replace inoperable units, which were mailed to Debtor and Debtor would replace in the truck. Debtor only became aware there were significant issues from Creditor after it filed its motion for relief and that 23 trucks had GPS issues. Though, after further investigation, Debtor learned that these 23 trucks never had GPS units installed on them, which was supposed to be done by Creditor.

10. Debtor is currently working closely with Creditor on this issue but is now left with footing the bill on paying its employees to install the units on the trucks which is estimated to take roughly 3 hours per truck at $100/hour for labor and at 23 trucks, roughly $6,900.00 [23 times $300 for labor), which Debtor will now have to absorb.

11. Debtor estimates the process to install the 23 units will take a month or two as most of the trucks are on the road and require the trucks to be onsite at its headquarters in Sacramento to correctly wire and install each unit and be available during business hours for its shop team to install the units.

12. Further, with Debtor having the financial ability to start making immediate payments, Creditor's collateral will be protected from any diminution in value.

13. Debtor does not owe any of trucks and in the event the Court grants Creditor's request, it would result in the immediate collapse and closure of its business, putting over 120 employees out of work. Debtor has the ability to operate a profitable business and believes it will have the resources and resources to pay all its creditors in full, including this Creditor. I declare under penalty of perjury of the laws of the United States that these facts are true to the best of my knowledge and belief.

DATED this 3rd day of March, 2020

/s/    Alban Lang
Alban Lang
Vice President of Debtor