**92**
**LAW OFFICES OF GABRIEL LIBERMAN, APC**
Gabriel E. Liberman (SBN 303010)
Gabe@4851111.com
1545 River Park Drive, Suite 530
Sacramento, California 95815
Telephone:    (916) 485-1111
Facsimile:    (916) 485-1111

Attorney for HENDRICKSON TRUCK LINES, INC.

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
SACRAMENTO DIVISION

| | |
|---|---|
| **In re:** | Case No.:  2019-27396-B-11 |
| | Chapter:  11 |
| HENDRICKSON TRUCK LINES, INC. | DCN:  GEL-6 |
| FEIN: 47-1616076 | |
| | **DISCLOSURE STATEMENT DESCRIBING HENDRICKSON TRUCK LINES, INC.'S CHAPTER 11 PLAN OF REORGANIZATION, DATED APRIL 9, 2020** |
| Debtor. | |
| | Date:   May 12, 2020 |
| | Time:   2:00 p.m. |
| | Place:  United States Bankruptcy Court |
| | Courtroom 32, Dept B. |
| | 501 "I" Street |
| | Sacramento, CA |
| | |
| | Judge:  Hon. Christopher D. Jaime |

Filed by:

Gabriel E. Liberman
Attorney for Debtor and Debtor in Possession
1545 River Park Drive, Suite 530
Sacramento, CA  95815
Gabe@4851111.com

_____1_____

**Table of Contents**

**APPENDIX** ................................................................................................................. **4**

**I.    INTRODUCTION** ............................................................................................... **5**

    *A.   Purpose of This Document* ........................................................... 5

    *B.   Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing* ........................... 5

**II.   BACKGROUND AND INFORMATION** ............................................................. **6**

    *A.   Debtor's History* ........................................................................ 6

    *B.   The Events Necessitating the Bankruptcy Filing.* ........................ 6

    *C.   Management of the Debtor Before and During the Bankruptcy* .............. 7

    *D.    Significant Events During the Bankruptcy Case* ...................... 7

    *E.   Projected Recovery of Avoidable Transfer* ................................ 9

    *F.   Current and Historical Financial Conditions* ............................ 9

**III.  ALLOWANCE AND DISALLOWANCE OF CLAIMS** ...................................... **10**

**IV.   TREATMENT OF CLAIMS AND EQUITY INTERESTS** ................................. **12**

    *A.*   **Unclassified Claims** ................................................................ 12

    *B.*   **Classes of Claims and Equity Interests** ................................... 13

    *C.   Classes of Priority Unsecured Claims* ...................................... 16

    *D.    Classes of General Unsecured Claims* ..................................... 18

    *E.   Classes of Equity Interests* ....................................................... 19

**V.    CONFIRMATION REQUIREMENTS AND PROCEDURES** ............................ **19**

    *a.   Who May Vote or Object* ........................................................... 19

    *b.   What Is an Impaired Claim or Impaired Equity Interest?* ........... 20

    *c.   Who is Not Entitled to Vote* ...................................................... 20

    *d.   Who Can Vote in More Than One Class* ................................... 20

    *e.   Votes Necessary to Confirm the Plan* ....................................... 20

| | | |
|---|---|---|
| **f.** | ***Votes Necessary for a Class to Accept the Plan*** | 21 |
| **g.** | ***Treatment of Nonaccepting Classes*** | 21 |
| **h.** | ***Liquidation Analysis*** | 22 |
| **i.** | ***Feasibility*** | 23 |
| **k.** | ***Tax Consequences*** | 24 |
| **l.** | ***Executory Contracts and Unexpired Leases*** | 24 |
| **VI.** | **EFFECT OF CONFIRMATION OF PLAN** | **25** |

**<u>APPENDIX</u>**

Exhibit A:    Post-Confirmation Budget

Exhibit B:    Priority Unsecured Creditor Distribution Schedule

Exhibit C:    General Unsecured Creditor Distribution Schedule

Exhibit D:    Liquidation Analysis

Exhibit E:    Stipulation resolving lease between Debtor and 19th Capital Group, LLC

Exhibit F:    Debtor's Plan of Reorganization

## I.     **INTRODUCTION**

This is the Disclosure Statement (the "Disclosure Statement") in the Chapter 11 Case of HENDRICKSON TRUCK LINES, INC. (the "Debtor").  Debtor is the source of the information contained in this document.  This Disclosure Statement contains information about the Debtor and describes her Plan of Reorganization which is filed forthwith (hereinafter referred to as the "Plan").   A full copy of the Plan will be served with this Disclosure Statement to all Parties entitled to service.  You will need to reference the Plan while reading this Disclosure Statement.  ***Your rights may be affected. You should read the Plan and this Disclosure Statement carefully and discuss them with your attorney. If you do not have an attorney, you may wish to consult one.***

### A.  *Purpose of This Document*

This Disclosure Statement describes:
1.  The Debtor and significant events that have occurred during his bankruptcy case,
2.  How the Plan proposes to treat claims or equity interests of the type you hold (i.e. what you will receive on your claim or equity interest if the plan is confirmed),
3.  Who can vote on or object to the Plan,
4.  Why the Debtor believes the Plan is feasible, and how the treatment of your claim or equity interest under the Plan compares to what you would receive on your claim or equity interest in liquidation, and
5.  The effect of confirmation of the Plan.

Be sure to read the Plan as well as the Disclosure Statement.  This Disclosure Statement describes the Plan, but it is the Plan itself that will, if confirmed, establish your rights.

### B.  *Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing*

The Court has not yet confirmed the Plan described in this Disclosure Statement.  This section describes the procedures pursuant to which the Plan will or will not be confirmed.

1.  <u>Deadline for Voting to Accept or Reject the Plan</u>

If you are entitled to vote to accept or reject the plan, vote on the enclosed ballot and return the ballot to Debtors' counsel by email to Gabe@4851111.com, or fax to (916) 437-4285.  (See section V) below for a discussion of voting eligibility requirements).  The last day for submitting written ballots is contained in the Order Setting Hearing on Confirmation and Establishing Deadlines.

2.  <u>Deadline for Objecting to the Adequacy of Disclosure and Confirmation of the Plan</u>

Objections to this Disclosure Statement or to the confirmation of the Plan must be filed with the Court and served upon Gabriel E. Liberman, Attorney for Debtors, by email at Gabe@4851111.com or by mail at 1545 River Park Drive, Suite 530, Sacramento, California 95815, and to the United States Trustee at 501 I Street, Suite 7-500, Sacramento, CA 95814.  Refer to the Order Setting Hearing on Confirmation and Establishing Deadlines.

### 3. Identity of Person to Contact for More Information

If you want additional information about the Plan, you should contact Gabriel E. Liberman, Attorney for Debtor via email Gabe@4851111.com or via telephone at (916) 485-1111.

### 4. Disclaimer

***The Court has not yet approved this Disclosure Statement as containing adequate information to enable parties affected by the Plan to make an informed judgment about its terms. The Court has not yet determined whether the Plan meets the legal requirements for confirmation, and the fact that the Court approves this Disclosure Statement does not constitute an endorsement of the Plan by the Court, or a recommendation that it be accepted.***

### 5. Principals/Affiliates of Debtor's Business

Debtor is a California corporation and owned by William Hendrickson and managed by Ward Hendrickson, President, and Alban Lang, Vice President and CFO.

## II. BACKGROUND AND INFORMATION

### A. Debtor's History

Debtor is a California corporation and a small, family-owned over-the-road interstate trucking company which serves ten (10) Western states (AZ, CA, CO, ID, NM, NV, OR, UT, WA, & WY) with principal place of business at 7080 Florin Perkins Road, Sacramento, California 95828.

Debtor has been operating since 1976 and was formerly doing business as Hendrickson Trucking Inc. On June 19, 2015, Hendrickson Trucking, Inc., FEIN: 68-0318984, filed for chapter 11 bankruptcy protection in the Eastern District of California, Sacramento Division, case no. 2015-24947-B-11 (the "Prior Case"). On February 20, 2017, the Court entered its order [ECF No. 477] confirming Hendrickson Trucking, Inc.'s chapter 11 plan of reorganization (the "Plan"). Pursuant to the terms of the Plan, Hendrickson Trucking Inc. thereafter transferred its assets and liabilities, including the Plan's obligations to the Debtor.

Following the closure of the Prior Case, Debtor was able to perform its contractual obligations under the Plan and paid roughly 64% of the Plan's liabilities, including 100% of administrative claims and the general unsecured creditors class. The remaining liabilities are from priority tax claims which are provided for in this plan.

### B. The Events Necessitating the Bankruptcy Filing.

Since confirming the Plan in the Prior Case, Debtor was able to sustain its normal on-going expenses and the on-going Plan obligations, all awhile sustaining a healthy profit margin. This all changed in or around January 2019, where the trucking freight market started to soften which led Debtor's customer taking bids from competitors at lower freight rates. With the decline in the overall freight tonnage and excessive truck capacity in the market, rates took a shark decline, from

.57 per mile or 21% lower than 2018 rates. Debtor estimates the reduction of the rate reduced its monthly gross revenue around $400,000 less each month while it was still obligated to drive the same mileage.

In addition to the rate decline, Debtor's top two customers elected to shift approximately 50% of Debtor's business to lower cost providers. These reduction in rates were industry wide and prevented Debtor from being able to replace its lost business revenue with similar revenue. To compound these issues, Debtor was in need of replacing its older trucks with lower mileage trucks and entered into a lease agreement in early 2019 with 19th Capital Group, LLC for 89 trucks with a monthly lease payment of $132,950.00.

Thereafter, Debtor experienced unanticipated maintenance issues with 25 of the new leased trucks, with issues beyond normal maintenance and service of trucks at their current age and mileage. Many of the trucks were not road worthy and broke down right after they were put in service and the combination of repairs to make them operable along with the downtime, immediately affected Debtor's cash flow. Debtor estimates the defective trucks costs the Debtor roughly $863,963, broken down as follows: (1) Cost to repair trucks: $181,963; (2) Towing fees: $12,000; and (3) Lost revenue and downtime: $606,250.00.

As a result of the issues addressed above, Debtor's cash flow reduced dramatically which caused Debtor to fall behind on the remaining Plan obligations, currently one-month delinquent, and the 19th Capital Group, LLC lease payments, currently one month behind with December's payment coming due shortly. Debtor reached out to 19th Capital Group, LLC to try and resolve the various issues with the defective trucks but was advised that they would not work with the Debtor until it came current, which it simply does not have the liquid capital to do, which will lead to the repossession of the 89 trucks, resulting a complete shutdown of Debtor's business and an inevitable liquidation.

Debtor filed the instant case to reorganize its debts including resolution of the 19th Capital Group, LLC lease obligations and the Prior Case's Plan obligations.

### C. *Management of the Debtor Before and During the Bankruptcy*

Debtor is a California corporation and owned by William Hendrickson and managed by Ward Hendrickson, President, and Alban Lang, Vice President and CFO, and will continue to operate its affairs during and after the bankruptcy in the same capacity.

### D. *Significant Events During the Bankruptcy Case*

2.01   **Commencement of the Chapter 11 Case**. On November 27, 2019, Debtor filed its voluntary petition for relief under Chapter 11 of the Bankruptcy Code, thereby commencing its bankruptcy case. Since the Petition Date, Debtor has been operating a debtor in possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code. No request has been made for the appointment of a trustee or examiner, and no official committees have been established in the Chapter 11 Case.

2.02   **First Day Motions**. On November 30, 2019, Debtor filed an application for an order to Shorten time to hear the Motion for the entry of an order (i) Authorizing Debtor to Pay Wages, Salaries and Other Employee Obligations; (ii) Authorizing and Directing Financial Institutions to Honor and Process Checks and Transfers Related to Such Obligations ("Wage Motion"), Motion to Approve Use of Cash Collateral for TAB Bank ("Cash Collateral Motion") and Motion for Order Authorizing Debtor to Obtain Debtor-in-Possession Financing (the "DIP Motion" and collectively referred as the "First Day Motions"). The court granted the orders to shorten time, scheduling interim hearings on the First Day Motions for December 3, 2019 at 9:30 a.m. (Docket Nos. 19, 20 and 21).

    A.   **Interim approval on First Day Motions.** On December 3, 2019 Debtor appeared before the Court regarding the Wage Motion, Cash Collateral Motion and DIP Motion and the Court granted, on interim basis, Debtor's requests by order, Docket Control Nos. 28, 29, and 30. The Court continued the matters for approval on final basis to January 7, 2020, setting a briefing schedule.

    B.   **Final approval on First Day Motions**. On January 7, 2020, Debtor appeared before the Court and the First Day Motions were granted in part on final basis. See Docket Nos. 73, 74 and 75.

2.03   **Initial Debtor Interview / Meeting of Creditors / Status Conferences**. On December 23, 2019, the United States Trustee's Office conducted Debtor's Initial Debtor Interview. Debtor's vice president, Alban Lang and Debtor's counsel appeared, and the matter was concluded. On December 30, 2019, the United States Trustee's Office conducted Debtor's meeting of creditors. Debtor's vice president, Alban Lang and Debtor's counsel appeared, and the matter was concluded.

2.04   **Retention of Professionals**. On December 26, 2019, the Court entered its Order Granting Debtors Ex-Parte Application to Employ the Law Offices of Gabriel Liberman, APC as Bankruptcy Counsel, Docket No. 61.

2.05   **Monthly Operating Reports and UST Quarterly Fees**. Debtor is current on its monthly operating reports and United State Trustee quarterly fees.

2.06   **19th Capital Group, LLC's Motion for Relief from Stay**. On February 6, 2020, 19th Capital Group, LLC, secured creditor for 89 if Debtor's tractor trailers filed their Motion for Relief from the Automatic Stay. Creditor amended their motion and requested the matter be heard on March 17, 2020. The Court tentatively denied the Motion based on the Debtor's opposition regarding adequate protection payments starting and the matter was continued to March 31 for the parties to resolve the motion by stipulation which has been approved by Debtor and is pending signatures by Movant. See Stipulation Exhibit E. The Court recently continued the hearing to May 5, 2020 pending the filing of the stipulation and order.

2.07   **Coronavirus Disease 2019 (COVID-19).** The virus, which causes a disease known as COVID-19, emerged in Wuhan, China in December 2019, but has since spread to at least 110

countries, including California. As a result of the virus, on March 19, 2020, the California governor issued a statewide lockdown and shelter in place order for all non-essential businesses. Debtor falls under an essential business and continues operate at this time.

The U.S. Department of Transportation's Federal Motor Carrier Safety Administration (FMCSA) also issued a national emergency declaration to provide hours-of-service regulatory relief to commercial vehicle drivers transporting emergency relief in response to the nationwide coronavirus (COVID-19) outbreak.

Debtor has seen an increase in business as well as gas prices dropping on average $1.00 from the Petition Date which has also helped Debtor's cash flow in February and March 2020.

### E. *Projected Recovery of Avoidable Transfer*

Debtor does not anticipate any avoidance actions or recovery from such actions.

### F. *Current and Historical Financial Conditions*

Historical and Current Performance:

Prior to the commencement of this case, Debtor's financials were partly unchanged where they are during the pendency of this case. Debtor continues to operate its trucking business and its relationship with Transportation Alliance Bank dba TAB Bank continues, whereby Debtor sells substantially all of its receivables to TAB Bank and immediately receives 90% of such receivables, minus TAB's administrative fees. TAB Bank then collects the receivables and upon collection releases the remaining 10% of sold receivables.

Post-Confirmation Financial Conditions:

The Debtor has provided projected financial information. Those projections are listed in **Exhibit "A"** and marked as Post Confirmation Budget.  The Debtor's financial projections show that the Debtor will have an aggregate monthly average cash flow, after paying operating expenses and post-confirmation obligations to pay the secured claims and the general unsecured class and continue to maintain a cash surplus.

Debtor anticipates receiving around the same income that Debtor's historical records show. Based on the historical performance and projected budget, Debtor should be able to make the plan payments. For these reasons, Debtor believes the Plan is feasible.

The COVID-19 Virus and pandemic presents unknown risk to the Debtor and its operations based on health concerns to its employees, government mandated lock downs that could force its operations to cease and supply and demand of essential vendors and other unknown risks associated with a national pandemic.  Debtor continues to operate as it is an essential business and has seen an increase in business as well as cost reduction due to gas prices dropping on average $1.00/gallon, which quantifies to a monthly savings of $30,000.00.

### G. *Insiders of the Debtors*

Under 11 USC 101, an insider is defined as
> (31) The term "insider" includes—
>> (A) if the debtor is an individual—
>>> (i) relative of the debtor or of a general partner of the debtor;
>>> (ii) partnership in which the debtor is a general partner;
>>> (iii) general partner of the debtor; or
>>> (iv) corporation of which the debtor is a director, officer, or person in control;

William Hendrickson is the chairman and 100% equity holder of Debtor, and is being consulted on major operation changes, customer changes, business lane and rate changes, and making final decision on major equipment purchases. He personally guarantees all company loans and leases.

Ward Hendrickson is son of the founder and has been with the company for over 30 years. He is the president of the Debtor. He is responsible for day-to-day operation, and he also personally guarantees all company loans and leases.

Alban Lang is the Vice President and CFO and is the signor of the Petition, and person most knowledgeable.

All three are personally responsible for a portion of the trust fund taxes which are priority taxes in this case. Ward and William are personal guarantors on much of the secured debt in this case.

The following list of insiders, their relationship to the Debtor's owners or managers, and all compensation paid them by the Debtor in the one year prior to the commencement of this bankruptcy case, as well as compensation paid during the pendency of this bankruptcy case is as follows:

| Name | Title | Pre-petition wages | Post-petition wages |
|---|---|---|---|
| Ward T. Hendrickson | President | $4,000/ wk  or $208k/ year salary | $4,000/ wk or $208k/ year salary |
| William W. Hendrickson | Chairman | $1,230.77 /wk or $64k/ year salary | $1,230.77 /wk  or $64k/year |
| Alban B. Lang | VP & CFO | $3,375 / wk or $175.5k/ year salary | $3,375 / wk  or $175.5k/year |

### III.   <u>ALLOWANCE AND DISALLOWANCE OF CLAIMS</u>

Debtor anticipates filing a claim objection against a disputed lease for equipment with Pitney Bowes Global Financial Services LLC, claim no..1, claim amount of $3,344.24 and against secured creditor, Ciras, LLC claim no. 4 for inaccurate accounting of its claim.

| Creditor | Claim No. and Amount | Basis for Dispute |
|---|---|---|
| Pitney Bowes | Claim No. 1: $3,344.24 | Disputed deficiency lease claim for stamp/mailing equipment. |
| Ciras, LLC | Claim No. 4: $272,139.73 | Debtor asserts this is inaccurate accounting of secured claim and amount should be $142,081.00. |

In the event additional claim objections will be filed, the Plan provides for such a procedure in the event such an issue arises. The Plan contains the following provision:

3.01 Disputed Claim. A disputed claim is a claim that has not been allowed or disallowed, and as to which either: (i) a proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or (ii) no proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated.

3.02 Delay of Distribution on a Disputed Claim. No distribution will be made on account of a disputed claim unless such claim is allowed by a final order.

3.03 Settlement of Disputed Claims. The Debtor will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure.

3.04 Deadline to file an application to approve an Administrative Claim: is **45 days** from the Effective Date. If a motion to an administrative claim is filed within the deadline but the motion is denied then the deadline of that administrative claim shall be extended 14 days after the Order denying the Application.

3.05 Deadline to file an objection to a claim is **45 days** from the Effective Date. If the Effective Date of the Plan lands before the deadline to file a claim, then the deadline to file an objection to the claim shall be the later of 30 days after the deadline to file claims or 45 days after the Effective Date.

### H. Means of Implementing the Plan

On the Effective Date of the Plan, Debtor shall become the Reorganized Debtor and shall continue to operate its business. Payments and distributions under the Plan will be funded by the following:

1. On the Effective Date of the Plan, Debtor will make the following distributions to claim holders under this Plan. These classes include:
   a. Monthly payments to secured claims of Transportation Alliance Bank;
   b. Monthly payment to secured claim of Coleson Investment Companies LLC;
   c. Monthly payment to secured claim of Ciras, LLC;
   d. Monthly payments to leaseholders: 19th Capital Group, LLC and Xerox Financial Services;
   e. Monthly payments to priority general unsecured claims; and

    f.   Monthly payments to the general unsecured class

2. Administrative claims, including attorney fees, and United States trustee fees, shall be paid upon confirmation of Debtors' plan.

3. Under this Plan, Debtor's equity holders will retain all property of the estate.

**IV.**     <u>**TREATMENT OF CLAIMS AND EQUITY INTERESTS**</u>

    4.01 <u>Unclassified Claims</u>.  Under section §1123(a)(1), administrative expense claims and priority tax claims are listed below.

    4.02 <u>Administrative Expense Claims</u>.  Each holder of an administrative expense claim allowed under § 503 of the Code will be paid in full on the effective date of this Plan, in cash, or upon such other terms as may be agreed upon by the holder of the claim and the Debtor.

    4.03 <u>Priority Tax Claims</u>.  Priority Tax Claims are provided in this Plan and paid consistent with the Bankruptcy Code including interest per 11 U.S.C. 511 consistent with 11 U.S.C. 507 Section (a)(8) and 11 U.S.C. 1129 Section (a)(9)(C).

    4.04 <u>United States Trustees Fees</u>.  All fees required to be paid by 28 U.S.C. §1930(a)(6) (U.S. Trustee Fees) will accrue and be timely paid until the case is closed, dismissed, or converted to another chapter of the Code.  Any U.S. Trustee Fees owed on or before the effective date of this Plan will be paid on the effective date, unless the UST agrees otherwise.

    4.05 <u>Summary of Estimated Amounts of Unclassified Claims:</u> The amounts listed in this table are an estimate only.

**A.**      <u>**Unclassified Claims**</u>

    *a.   Administrative Claims are listed above; Professional Fees and United States Trustee Fees.*

| Type of Claim | Estimated Amount | Basis for Claim |
|---|---|---|
| Professional Fees and Expenses (subject to final fee applications and court approval)<br><br>Known fees and expenses in this class: | **$50,000**<br>*(Estimated amt.)* | Balance due to professionals of Debtor. Amount is merely a rough estimate as the amount of fees between now and confirmation is a large variable.<br><br>Debtor's counsel is currently holding $0.00 as a post-petition retainer as of filing of this Disclosure Statement. |

| | | |
|---|---|---|
| Fees and expenses incurred in representing the Debtor in Possession owed to the Law Offices of Gabriel E. Liberman, APC | | Under this Plan, Administrative Expenses shall be paid in monthly installments of $25,000.00 following effective date of the Plan or upon such other terms as may be agreed upon by the holder of the claim and the Debtor. |
| Other Unpaid Administrative Expenses<br><br>None anticipated | $0 | Any other unpaid administrative priority expenses, other than expenses paid in the ordinary course during the Case. |
| Cure Payments | $0 | There are no projected payments necessary to cure monetary defaults under assumed executor contracts or unexpired leases. |
| Clerk's Office Fees | $0 | There are no projected payments necessary to cure monetary defaults under assumed executor contracts or unexpired leases. |
| U.S. Trustee Fees | $0 | Debtor believes it is current on UST fees and anticipates being current through confirmation. |
| **Total** | **$50,000** | |

### B.  Classes of Claims and Equity Interests

#### a.  *Classes of Secured Claims*

| **CLASS** | **IMPAIRMENT** | **TREATMENT** |
|---|---|---|
| Class 1<br><br>Claim holder:<br>**Coleson Investment Companies LLC, SBA Loan**<br>5428 Watt Avenue<br>North Highlands, CA 95660<br><br>First Deed of Trust on commercial property:<br>*7080 Florin Perkins Road*<br>*Sacramento CA 95828*<br>*8.54 acres*<br>*APN: 064-0040-023*<br><br>Claim: $ 73,585.00*<br>Value: $2,640,000.00<br>*(Value based on appraisal)* | Unimpaired | Under this plan the Debtor shall continue to make mortgage payments to the Class 1 claimant in accordance with the pre-petition terms of the mortgage agreement.<br><br>Monthly payment: **$5,085.66**<br><br>As such the Debtor shall make monthly installments payments to the claim holder.<br><br>Payments shall continue as normally scheduled under the Note and Deed of Trust. |

| | | |
|---|---|---|
| *No proof of claim has been filed. | | |
| <u>Class 2</u><br><br>Claim holder:<br>**<u>Transportation Alliance Bank, Inc.</u>**<br>4185 Harrison Blvd.<br>Suite 200<br>Ogden, UT 84403<br><br>Second Deed of Trust on commercial property:<br>*7080 Florin Perkins Road Sacramento CA 95828*<br>*8.54 acres*<br>*APN: 064-0040-023*<br><br>Secured by Cross-collateralized:<br>TAB's claims are cross-collateralized and cross-defaulted such that its claims are fully secured pursuant to the terms of post-petition financing agreement approved by this Court.<br><br><br>Estimated Claim:<br>$1,353,796.00 *<br>Value: $2,640,000.00<br>*(Value based on appraisal)*<br><br>*Proof of claim No. 6 filed 3-24-2020 | Impaired (Long Term Debt) | Under this plan, the Claim in Class 2 is to be treated as Fully Secured. The only impairment to this Claim holder is the extension of the balloon payment.<br><br>The secured claim shall be paid as follows:<br><br>Monthly payment: **$20,052.92**<br>Interest rate**: 6.5%**<br>Balloon payment extended and due on month 36 from the Effective Date of the Plan for **$1,352,796.00**<br><br>The foregoing provisions shall be deemed to be modifications to the loan documents related to Business Loan Agreement dated as of July 30, 2008 and modified by Modification Agreement dated March 24, 2017 ("Loan"). Except as expressly modified herein, the prepetition loan documents relating to Loan remain in full force and effect. In the event of a default under such Loan, as modified herein, TAB Bank may exercise all of its remedies available under applicable state law. Likewise, Debtors maintain all rights and protections of California law.<br><br>Payments shall continue as normally scheduled under the Loan agreement.<br><br>In the event of a default, this Claimant may exercise all of its remedies available under applicable state law. Likewise, Debtors maintain all rights and protections of California Real Property and Foreclosure Law. Claimant may not repossess or dispose of their collateral so long as Debtor is not in material default under the Plan. |

| Class 3 | Unimpaired | Under this plan the Debtor shall continue to make the contractual payments to the Class 6 claimant in accordance with the pre-petition terms of the security agreement. |
|---|---|---|
| Claim holder: **Transportation Alliance Bank, Inc.** 4185 Harrison Blvd. Suite 200 Ogden, UT 84403 | | Monthly payment: **$36,084.00** Estimated payoff of loan in less than 24 months |
| Secured by 210 Trailers | | Payments shall continue as normally scheduled under the security agreement. |
| Claim: $753,614.40* Balance owed on tractors: $805,030.00 Value: $1,264,009.00 *(Value based on Debtor's opinion)* | | In the event of a default, this Claimant may exercise all of its remedies available under applicable state law. Likewise, Debtors maintain all rights and protections of California Foreclosure Law. |
| *Proof of claim No. 6 filed 3-24-2020 | | |
| Class 4 | Unimpaired | All rights under the loan documents remain intact post confirmation. |
| Claim holder: **Transportation Alliance Bank, Inc.** 4185 Harrison Blvd. Suite 200 Ogden, UT 84403 | | This claim is fully secured by Cross-collateralized and cross-defaulted pursuant to the terms of the post-petition financing, which was granted by order of this Court on January 15, 2020 (Docket No. 75) |
| Secured by: Account Receivables | | |
| Claim: $2,551,612.00 Receivables as of Petition Date: Less 90 days: $2,901,979.00 Over 90 days: $203,209.00 Total: $3,105,188.00 | | |
| Proof of claim No. 6 filed 3-24-2020 | | |

| Class 5<br><br>Claim holder:<br>**Ciras, LLC**<br>c/o EBC Asset Investment<br>3000 Smoot Road - Ste A<br>Smoot, WV 24977<br><br>Secured by 50 trailers<br><br>Claim: $142,081.00*<br>Value of collateral:<br>$250,000.00<br>*(Value based on Debtor's opinion)*<br><br>*Proof of Claim no. 4 filed on 3/6/2020 provides secure claim at $272,139.73. Debtor asserts this is inaccurate and will dispute claim. | Unimpaired | Under this plan the Debtor shall continue to make the contractual payments to the Class 5 claimant in accordance with the pre-petition terms of the security agreement.<br><br>Monthly payment: **$5,048.05**<br>Interest rate per annum: **5.0%**<br>Estimated payoff of loan in less than 24 months |

### C. Classes of Priority Unsecured Claims

| **TYPE OF CLAIM** | **Date of Assessment** | **TREATMENT** |
|---|---|---|
| Class 6<br><br>Claim holder:<br>**Internal Revenue Service (IRS)**<br>P O Box 7346<br>Philadelphia, PA 19101<br><br>Claim: $240,219.66*<br>Priority amount: $240,219.66<br><br>Secured by:<br>Unsecured<br><br>*No Proof of claim has been filed. | 2010 – 2014<br>(WT-FICA; FUTA) | This Priority Claim shall be paid in full within 60 months of the effective date of the confirmed plan.<br><br>Claim Amount: $240,219.66<br>Months 1-12: $ 0.00<br>Months 13-24: $2,056.46<br>Months 25-36: $3,701.63<br>Months 37-48: $4,441.95<br>Months 49-60: $10,364.56<br><br>Interest Rate: 5.00%<br><br>Interest shall accrue at the normal rate of interest charged by the Claimant under non-bankruptcy law; however, no penalties shall accrue in addition to the interest for taxes paid within this Plan. |

| | | See **Exhibit B** for additional calculation and breakdown of payment |
|---|---|---|
| <u>Class 7</u><br><br>Claim holder:<br>**California Department of Tax and Fee Administration**<br>Po Box 942879<br>Sacramento, Ca 94279-0055<br><br>Claim: $84,723.24*<br>Priority unsecured amount: $84,723.24<br><br>*Proof of claim No. 2 filed on 2/21/2020 | 2007-2009<br>(Int'l. Fuel Tax) | This Priority Claim shall be paid in full within 60 months of the effective date of the confirmed plan.<br><br>Claim Amount: $84,723.24<br>Months 1-12: $ 0.00<br>Months 13-24: $736.99<br>Months 25-36: $1326.59<br>Months 37-48: $1,591.91<br>Months 49-60: $3714.45<br><br>Interest Rate: 8.00%<br><br>Interest shall accrue at the normal rate of interest charged by the Claimant under non-bankruptcy law; however, no penalties shall accrue in addition to the interest for taxes paid within this Plan.<br><br>See **Exhibit B** for additional calculation and breakdown of payment |
| <u>Class 8</u><br><br>Claim holder:<br>**Employment Development Department (EDD)**<br>Bankruptcy Group MIC 92E, PO BOX 826880<br>Sacramento, CA 95814<br><br>Claim: $506,612.84*<br>Priority unsecured: $415,881.43<br>Unsecured: $90,731.41<br><br>*Proof of claim No. 5 filed 3/6/2020 | 2008-2015<br>(Unemployment Insurance and/or Employment Training Tax (ETT)) | This Priority Claim shall be paid in full within 60 months of the effective date of the confirmed plan.<br><br>Claim Amount: $415,881.43<br>Months 1-12: $ 0.00<br>Months 13-24: $3,541.23<br>Months 25-36: $6,374.21<br>Months 37-48: $7,649.05<br>Months 49-60: $17,847.78<br><br>Interest Rate: 4.00%<br><br>Interest shall accrue at the normal rate of interest charged by the Claimant under non-bankruptcy law; however, no penalties shall accrue in addition to the interest for taxes paid within this Plan. |

| | | See **Exhibit B** for additional calculation and breakdown of payment |
|---|---|---|
| Class 9<br><br>Claim holder:<br>**Oregon Department of Transportation**<br>Financial Services Collections<br>355 Capital St. NE MS#21<br>Salem, OR 97301<br><br>Total Claim: $438,167.87<br>Priority: $438,167.87<br><br>Secured by:<br>$70,249.76 Cash deposit in lieu of bond<br><br>*No proof of claim filed | 2012-2015<br>(Hwy Use Tax) | This Priority Claim shall be paid in full within 60 months of the effective date of the confirmed plan.<br><br>Claim Amount: $438,167.87<br>Months 1-12: $ 0.00<br>Months 13-24: $3,928.56<br>Months 25-36: $7,007.52<br>Months 37-48: $8,409.03<br>Months 49-60: $19,621.07<br><br>Interest Rate: 12.00%<br><br>Interest shall accrue at the normal rate of interest charged by the Claimant under non-bankruptcy law; however, no penalties shall accrue in addition to the interest for taxes paid within this Plan.<br><br>See **Exhibit B** for additional calculation and breakdown of payment |

### D.  Classes of General Unsecured Claims

| **CLASS** | **IMPAIRMENT** | **TREATMENT** |
|---|---|---|
| Class 10<br><br>**General unsecured claims**<br>Estimated Total: $457,004.79<br><br>Daimler Chrysler Financial Services: $200,533.38 – Assumed Lease deficiency claim<br><br>Kaiser Foundational Health Plan, Inc.: $132,890.00 – Employee healthcare benefits<br><br>Phoenix Settlement Administration re; Sylvio ST. | Impaired | Debtor shall pay **100%**  to this class to be distributed to claim holders in this class on a pro rata basis **over 16 months** or  sooner as follows:<br><br>Monthly Payment: **$28,562.80**<br>Interest Rate per Annum: **0%**<br><br>1st payment will commence after all administrative claims have been paid in full. Debtor estimates payments will begin 120 days after the Effective Date. Payments will be made in equal monthly payments by the 15th of each month. A distribution schedule is attached hereto as **Exhibit C** |

| | | |
|---|---|---|
| Amand: $32,850.00 – Class action settlement on misclassification of employees.<br><br>Pitney Bowes: $3,344.24 Disputed deficiency lease claim. Debtor intends on objecting to proof of claim, No. 1.<br><br>Class 8<br>Unsecured non-priority portion of EDD claim: $90,731.41 | | In the event of a default, this Claimant may exercise all of its remedies available under applicable state law. Likewise, Debtors maintain all rights and protections of California Real Property and Foreclosure Law. Claimant may not repossess or dispose of their collateral so long as Debtor is not in material default under the Plan. |

### E. Classes of Equity Interests

| | | |
|---|---|---|
| <u>Class 11</u><br><br>**<u>Equity Interest Holders of the Debtor in the Property of the Estate.</u>**<br><br>Current holders of equity are as follows:<br>William Hendrickson – 1,000 shares | Unimpaired | Current Equity Interest Holders of the Debtor, William Hendrickson, shall retain his full interest in the equity that he holds. |

## V.    <u>CONFIRMATION REQUIREMENTS AND PROCEDURES</u>

To be confirmable, the Plan must meet the requirements listed in §§ 1129(a) or (b) of the Code. These requirement include that: the Plan must be proposed in good faith; at least one impaired class of claims must accept the plan, without counting votes of insiders; the Plan must distribute to each creditor and equity interest holder at least as much as the creditor or equity interest holder would receive in a chapter 7 liquidation case, unless the creditor or equity interest holder votes to accept the Plan; and the Plan must be feasible. These requirements are not the only requirements listed in § 1129, and they are not the only requirements for confirmation.

### a. Who May Vote or Object

Any party in interest may object to the confirmation of the Plan if the party believes that the requirements for confirmation are not met.

Many parties in interest, however, are not entitled to vote to accept or reject the Plan. A creditor or equity interest holder has a right to vote for or against the Plan only if that creditor or equity interest holder has a claim or equity interest that is both (l) allowed or allowed for voting purposes and (2) impaired.

In this case, the Plan Proponent sets forth in the Plan which classes are Impaired. The holders of claims in each of these classes are therefore entitled to vote to accept or reject the Plan. The Plan Proponent sets forth in the Plan which classes are unimpaired; holders of claims in each of these classes, therefore, do not have the right to vote to accept or reject the Plan.

### b. What Is an Impaired Claim or Impaired Equity Interest?

As noted above, the holder of an allowed claim or equity interest has the right to vote only if it is in a class that is *impaired* under the Plan. As provided in § 1124 of the Code, a class is considered impaired if the Plan alters the legal, equitable, or contractual rights of the members of that class.

### c. Who is Not Entitled to Vote

The holders of the following five types of claims and equity interests are not entitled to vote:

i.   holders of claims and equity interests that have been disallowed by an order of the Court;
ii.  holders of other claims or equity interests that are not "allowed claims" or "allowed equity interests" (as discussed above), unless they have been "allowed" for voting purposes.
iii. holders of claims or equity interests in unimpaired classes;
iv.  holders of claims entitled to priority pursuant to §§ 507(a)(2), (a)(3), and (a)(8) of the Code; and
v.   holders of claims or equity interests in classes that do not receive or retain any value under the Plan;
vi.  administrative expenses.

### d. Who Can Vote in More Than One Class

A creditor whose claim has been allowed as a secured claim and in as an unsecured claim, or who otherwise hold claims in multiple classes, is entitled to accept or reject a Plan in each capacity, and should cast one ballot for each claim.

### e. Votes Necessary to Confirm the Plan

If impaired classes exist, the Court cannot confirm the Plan unless (I) at least one impaired class of creditors has accepted the Plan without counting the votes of any insiders within that class, and (2) all impaired classes have voted to accept the Plan, unless the Plan is eligible to be

_____20_____

confirmed by "cram down" on non-accepting classes, as discussed later in Article V, Section G below.

### f. Votes Necessary for a Class to Accept the Plan

A class of claims accepts the Plan if both of the following occur: (1) the holders of more than one-half (1/2) of the allowed claims in the class, who vote, cast their votes to accept the Plan, and (2) the holders of at least two-thirds (2/3) in dollar amount of the allowed claims in the class, who vote, cast their votes to accept the Plan. A class of equity interests accepts the Plan if the holders of at least two-thirds (2/3) in amount of the allowed equity interests in the class, who vote, cast their votes to accept the Plan.

### g. Treatment of Nonaccepting Classes

Even if one or more impaired classes reject the Plan, the Court may nonetheless confirm the Plan if the nonaccepting classes are treated in the manner prescribed by § 1129(b) of the Code. A plan that binds nonaccepting classes is commonly referred to as a "cram down" plan. The Code allows the Plan to bind nonaccepting classes of claims or equity interests if it meets all the requirements for consensual confirmation except the voting requirements of § 1129(a)(8) of the Code, does not "discriminate unfairly," and is "fair and equitable" toward each impaired class that has not voted to accept the Plan. *You should consult your own attorney (if a "cramdown" confirmation will* affect your claim or equity interest, as the variations on this general rule are numerous and complex.

1129(b)(2)(B) states:

With respect to a class of unsecured claims—
(i) the plan provides that each holder of a claim of such class receive or retain on account of such claim property of a value, as of the effective date of the plan, equal to the allowed amount of such claim; or
(ii) the holder of any claim or interest that is junior to the claims of such class will not receive or retain under the plan on account of such junior claim or interest any property, except that in a case in which the debtor is an individual, the debtor may retain property included in the estate under section 1115, subject to the requirements of subsection (a)(14) of this section.

Debtor holds an interest that is junior to the interest of its creditors. Debtor contemplates that it is unlikely that any creditors will object because the Plan provides for 100% of all allowed claims.

The Plan does not violate the absolute priority rule. The absolute priority rule comes into play when a class of similar situated creditors do not agree with the plan. The Court will only confirm a plan over the objections of this dissenting group of creditors if:

1. The dissenting creditors will be paid in full, see 11 U.S.C. 1129(b)(2)(B)(i), or

2. No one with a claim or interest that is junior to the claims of the dissenting creditor will get or retain anything under the plan, see 11 U.S.C. 1129(b)(2)(B)(ii) (called a "cramdown").

There are controversial exceptions to this rule such as the "new value" exception. However, this is the basic rule. Often the owners of a company want to retain an ownership interest in the reorganized company. In the context of a confirmation battle, the absolute priority rule prevents the retention of an equity interest by the owners if a cramdown is being proposed because the stockholders are junior to the interests of the unsecured creditors. The rule has even been applied to the exempt estate property of an individual in Chapter 11. This is very controversial and many believe that despite the absolute priority rule the exemption provisions of the Bankruptcy Code, 11 U.S.C. 522, should be interpreted to allow individuals to keep exempt property even in Chapter 11 cramdown plans.

In this case, the Plan does not violate the absolute priority rule as it intends to pay all claims in full.

### h.  *Liquidation Analysis*

To confirm the Plan, the Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claim and equity interest holders would receive in a hypothetical chapter 7 liquidation.

Section 1129(a)(7) of the Bankruptcy Code requires that a holder of a Claim in an impaired Class receive or retain under the Plan not less than the holder would receive or retain on account of the Claim if the debtor liquidated under Chapter 7 of the Bankruptcy Code. This test is often referred to as the "best interests of creditors" test.

To apply the "best interests" test, the Bankruptcy Court must first calculate the aggregate dollar amount that would be generated from a liquidation of the Debtor's assets in a hypothetical liquidation on the Effective Date under Chapter 7, including the amount of cash and other tangible assets held by such Debtor and the value of any projected recoveries on actions against third parties and other intangible assets held by such Debtor (the "Liquidation Value"). The Liquidation Value must then be reduced by the costs of liquidation, including administrative costs of the Chapter 7 estates and compensation to the Chapter 7 trustees and other professionals retained by the trustees (the "Liquidation Costs"). After estimating the Liquidation Value and the Liquidation Costs, the Bankruptcy Court must ascertain the potential Chapter 7 recoveries by Creditors and then compare those recoveries with the distributions offered under the Plan to determine if the Plan is in the "best interests" of creditors in each Class. Attached hereto as **Exhibit "D"** is a spreadsheet setting forth the Liquidation Value, the Liquidation Costs and the expected return to unsecured creditors in a Chapter 7 case.

The management of Debtor has estimated all the values for the personal property stated on Exhibit "D." Debtor has not engaged a professional appraiser to appraise Debtor's personal

property, though the commercial property located at 7080 Florin Perkins Road, Sacramento CA 95828 was appraised by TAB Bank back in March 2019. If creditors believe the values stated on Exhibit "D" are inaccurate, they may hire one or more appraisers to dispute those values at a plan confirmation hearing.

As described with more particularly on Exhibit "D", the Debtor believes that the Plan provides a distribution of what would be achieved in a hypothetical Chapter 7 liquidation, as a Chapter 7 would yield 100% distribution to unsecured creditors, as is being proposed herein.

### i. *Feasibility*

The Court must find that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor, unless such liquidation or reorganization is proposed in the Plan.

In this case, Debtor's equity holders are proposing to retain all assets and continue to work to provide cash flow and proposing to pay all Creditors 100% of the value of their Allowed Claims or Interests or to reinstate such Claim.

This is Debtor's second chapter 11 bankruptcy filing seeking reorganization, though the basis for this filing versus the Debtor's first chapter 11 back in 2015 very but the risk the Debtor would file a third bankruptcy case has to be taken into consideration. Debtor has structured payments in this case similar to the payment structure of the 2015 case, whereby it is paying the administrative and unsecured claims first then staggering the priority unsecured claims over the balance of five years in a step-up method , with payments increasing each year. One of the factors that caused the Debtor to refile was maintenance issues with leased trucks with 19th Capital Group, which Debtor believes cost the company in over $800,000 of losses. Debtor does not anticipate leasing vehicles for another five years; thus this issue will not likely occur again in the future.

Attached hereto as **Exhibit A** is the projected post-confirmation budget for the debtor during the Plan. The Budget provides that Debtor will have sufficient income from business operations to pay the proposed Plan payments and will have a surplus after providing for all payments each month.

### j. *Risk Factors*

The restructuring of the Debtor contemplated by the Plan involves a degree of risk, and this Disclosure Statement contains forward-looking statements that involve risks and uncertainty. The Debtor's actual results could differ materially from those anticipated in such forward-looking statements as a result of a variety of factors, including those set forth in the following risk factors and elsewhere in this Disclosure Statement. Holders of Claims should consider carefully the following factors, in addition to the other information contained in the Plan and Disclosure Statement, before submitting a vote to accept or reject the Plan. The below risk

factors should not be regarded as constituting the only risks involved in connection with the Plan and its implementation.

1. Debtor may not generate the revenue it has projected. The amount of gross revenue generated by sales in 2019 was on average, $800k to $1M lower than 2018. Debtor expects the market rate for trucking to increase in 2020. However, it is possible that another economic downturn could cause the market to soften as it did in 2019, resulting in the truck rates decreasing, resulting in decreased income.

2. Expenses could be greater than projected. The expenses stated in the budget are projected and based on prior historical  expenses and it is possible that Debtor will need to incur more expenses than those listed. For example, Debtor may need to repair its trucks as they break down and such expenses maybe higher then projected or gas prices may go up resulting in higher costs to operate the same load.

3. The COVID-19 Virus and pandemic presents unknown risk to the Debtor and its operations based on health concerns to its employees, government mandated lock downs that could force its  operations to cease and supply and demand of essential vendors and other unknown risks associated with a national pandemic.  Debtor continues to operate as it is an essential business and has seen an increase in business as well as cost reduction due to gas prices dropping on average $1.00/gallon, which quantifies to a monthly savings of $30,000.00.

### k.   Tax Consequences

**Creditors Concerned with How the Plan May Affect Their Tax Liability Should Consult with Their Own Accountants, Attorneys, and/or Advisors.**

Generally, any property that a claimant receives to satisfy a debt is taxable income. However, any loss that the claimant realizes under the Plan due to the Debtors' failure to satisfy the full amount due to the creditor should be a deducible loss for the creditor if the amount of the debt was previously recorded as gross income.

### l.   Executory Contracts and Unexpired Leases

| Creditor | Date Entered Lease | Asset Description | Treatment |
|---|---|---|---|
| 19th Capital Group, LLC | 10/19/2018, amended 5/8/2019 | 89 Trailers | Debtor shall pay the claim of 19th Capital Group, LLC regarding 89 tractors. 19th Capital Group, LLC filed Proof of Claim No 7.  Debtor will assume the lease at the modified terms, described in |

| | | | Stipulation attached hereto as **Exhibit E** and summarized below:<br><br>Payment due date: 15th of the month<br>March 2020: $198,525.00<br>April 2020: $198,525.00<br>Payment covers February post-petition delinquency.<br><br>Repayment plan starts May 1, 2020: $157,132.49<br><br><br>Except as expressly modified by this Plan and Stipulation, the agreement between the parties shall otherwise remain in full force and effect. |
|---|---|---|---|
| Xerox Financial Services | 02/2019 | Copy machine and maintenance support | Assume 36-month lease for office copier. Monthly payment: $2,530.00. |

    <u>Other Leases and Executory Contracts</u>.  Debtor is not aware of any other unexpired leases or executory contracts.  If any should be found to exist, it is rejected.  A Proof of Claim for damages resulting from a rejection shall be filed within thirty (30) days after the entry or an order of the Court approving the rejection.  Such claim shall be deemed allowed unless, thirty (30) days of service a copy of the Proof of Claim upon HTL and its Counsel, an objection is filed.  Each objection shall be determined by the Court as a contested matter under ("FRBP"), 9014.  Any such Claim shall be added to the general unsecured class in the Plan.


**VI.**    <u>**EFFECT OF CONFIRMATION OF PLAN**</u>

    The Plan contains the following provisions:

**EFFECT OF CONFIRMATION AND GENERAL PROVISIONS**

       i. <u>Definitions and Rules of Construction.</u> The definitions and rules of construction set forth in §§101 and 102 of the Code shall apply when terms defined or construed in the Code are used in this Plan.

       ii. <u>Effective Date of Plan</u>. The Effective Date of this Plan is the fifteenth day following

the date of the entry of the final order of confirmation. But if a stay of the confirmation order is in effect on that date, the Effective Date will be the first business day after that date on which no stay of the confirmation order is in effect, provided that the confirmation order has not been vacated.

iii. Severability. If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

iv. Binding Effect. The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity.

v. Vesting of Property.  On the Effective Date, all property of the estate will vest in the reorganized debtor.

vi. Plan Creates New Obligations.  Except as otherwise stated in the Plan, the payments promised in the Plan constitute new contractual obligations that replace those obligations to creditors that existed prior to the Effective Date.

vii. Creditor Action Restrained.  Creditors may not take any action to enforce either preconfirmation obligations or obligations due under the Plan, so long as the Debtor is not in material default under the Plan. If the Debtor is in material default under the Plan, affected creditors may: (i) take any action permitted under nonbankruptcy law to enforce the terms of the Plan; or (ii) move to dismiss this case or to convert this case to a chapter 7 bankruptcy case.

viii. Material Default Defined.  If Debtor fails to make any payment, or to perform any other obligation required under the Plan, for more than 15 days after the time specified in the Plan for such payment or other performance, any member of a class affected by the default may serve upon Debtor and Debtor's attorney (if any) a written notice of Debtor's default.  If Debtor fails within 30 days after the date of service of the notice of default either: (i) to cure the default; (ii) to obtain from the court an extension of time to cure the default; or (iii) to obtain from the court a determination that no default occurred, then Debtor is in Material Default under the Plan to all the members of the affected class.

ix. Remedies Upon Material Default.  Upon Material Default, any member of a class affected by the default: (i) may file and serve a motion to dismiss the case or to convert the case to Chapter 7; or (ii) without further order of the court has relief from stay to the extent necessary, and may pursue its lawful remedies to enforce and collect Debtor's pre-confirmation obligations.

x. Post-confirmation United States Trustee Quarterly Fees.  A quarterly fee shall be paid by Debtor to the United States Trustee, for deposit into the Treasury, for each quarter (including any fraction thereof) until the case is converted, dismissed, or closed by the entry of a final decree pursuant to 28 U.S.C. § 1930(a)(6).

xi. Chapter 11 Post-confirmation Reports and Final Decree.  Post-confirmation Reports: At the end of each calendar quarter, Debtor shall file with the Court a post-confirmation status report, the purpose of which is to explain the progress made toward full administration of the

confirmed plan of reorganization. The first Report shall be filed for the portion of the calendar quarter from the date of confirmation to the end of the quarter. Subsequent reports shall be filed at the expiration of each calendar quarter thereafter until dismissal, conversion, or entry of a final decree closing the case. Reports shall be filed with the Court and served upon the United States Trustee not later than twenty (20) days after the expiration of the reported quarter.

The Report shall include a statement of receipts and disbursements, with the ending cash balance, for the entire 90-day period. The report shall also include information sufficiently comprehensive to enable the court to determine:

(a) whether the order confirming the plan has become final; (2) whether deposits, if any, required by the plan have been distributed; (3) whether any property proposed by the plan to be transferred has been transferred; (4) whether Debtor under the plan has assumed the business or the management of the property dealt with by the plan; (5) whether payments under the plan have commenced; (6) whether accrued fees due to the United States Trustee under 28 U.S.C. §1930(a)(6) have been paid; and (7) whether all motions, contested matters and adversary proceedings have been finally resolved.

(b) Service of Reports: A copy of each report shall be served upon the United States Trustee and other persons or entities as have requested service of such reports in writing with the Court, no later than the day upon which it is filed with the Court.

(c) Final Decree: After the estate is fully administered, Debtor shall file an application for final decree, and shall serve the application on the United States Trustee, together with a proposed final decree. The United States Trustee shall have twenty (20) days within which to object or otherwise comment upon the Court's entry of the final decree.

xii. Discharge. Except as specifically provided in the Plan and/or the Confirmation Order, as of the Effective Date, Confirmation shall discharge the Debtor pursuant to section 1141(d)(1)(A) of the Bankruptcy Code from any and all Claims of any nature whatsoever, including any Claims and liabilities that arose prior to Confirmation, and all debts of the kind specified in sections 502(g), 502(h) or 502(i) of the Bankruptcy Code, whether or not (a) a Proof of Claim based on such Claim was filed or deemed filed under section 501 of the Bankruptcy Code, or such Claim was listed on the Schedules of the Debtors, (b) such Claim is or was Allowed under section 502 of the Bankruptcy Code, or (c) the holder of such Claim has voted on or accepted the Plan. Except as provided for in the Plan and/or the Confirmation Order, the rights that are provided in the Plan as of the Effective Date shall be in exchange for and in complete satisfaction, settlement and discharge of all Claims against, liens on, and interests in the Debtor or any Estate Property.

Respectfully submitted,

Dated: April 9, 2020

LAW OFFICES OF GABRIEL LIBERMAN, APC

By:     /s/ Gabriel E. Liberman
        Gabriel E. Liberman
        Attorney for Debtor
        Gabe@4851111.com

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT A

## Post-Confirmation Budget

**Hendrickson Truck Lines, Inc.**
**Post- Confirmation Monthly Budget**

| | YEAR 1 | YEAR 2 | YEAR 3 | YEAR 4 | YEAR 5 |
|---|---|---|---|---|---|
| **Cash Receipts from TAB Bank** | 1,715,000 | 1,730,000 | 1,750,000 | 1,775,000 | 1,850,000 |
| **Cash payments:** | | | | | |
| Peoplease driver wages & taxes | 480,000 | 490,000 | 500,000 | 510,000 | 520,000 |
| Office & shop wages & taxes | 142,760 | 145,000 | 147,000 | 150,000 | 152,500 |
| Workers Compensation | 64,640 | 66,000 | 68,000 | 70,000 | 72,000 |
| Kaiser health insurance | 44,297 | 44,297 | 44,297 | 44,297 | 44,297 |
| Fuel & oil | 305,000 | 315,000 | 325,000 | 335,000 | 345,000 |
| Maintenance | 126,160 | 130,000 | 135,000 | 145,000 | 155,000 |
| Taxes & licensing | 55,945 | 58,000 | 60,000 | 62,000 | 64,000 |
| Insurance | 130,000 | 132,000 | 135,000 | 137,000 | 140,000 |
| Office equip & terminal rents | 13,642 | 13,642 | 13,642 | 13,642 | 13,642 |
| Safety & recruiting | 45,000 | 45,000 | 45,000 | 45,000 | 45,000 |
| Communication & utilities | 13,500 | 13,500 | 13,500 | 13,500 | 13,500 |
| Misc admin expenses | 5,500 | 5,500 | 5,500 | 5,500 | 5,500 |
| **Secured debt payments** | | | | | |
| Coleson Investments - Class 1 (ends in <12 months) | 5,086 | - | - | - | - |
| TAB Bank - Class 2 (Balloon in month 36) | 20,053 | 20,053 | 20,053 | - | - |
| TAB Bank - Class 3 (ends in <24 months) | 36,084 | 36,084 | - | - | - |
| Ciras, LLC - Class 5 (ends in <24 months) | 5,048 | 5,048 | - | - | - |
| 19th Capital Group LLC-Equip Lease(ends in <24 mo) | 157,132 | 124,435 | 113,150 | 113,150 | 113,150 |
| 21 trucks lease expired on 1/31/21 | | | | | |
| **Priority Claims -Plan Payments** | | | | | |
| IRS - Class 6 | - | 2,056 | 3,702 | 4,442 | 10,365 |
| California Board of Equalization - Class 7 | - | 715 | 1,287 | 1,545 | 3,605 |
| EDD - Class 8 (need to adjust the bal to 506,612.84) | - | 3,541 | 6,374 | 7,649 | 17,848 |
| Oregon Dept of Transportation - Class 9 | - | 3,928 | 7,008 | 8,409 | 19,621 |
| Unsecured creditors -Class 10 (ends in 16 months) | 28,563 | 28,563 | | | |
| Total Cash Disbursements | 1,678,410 | 1,682,363 | 1,643,512 | 1,666,134 | 1,735,027 |
| **Budget surplus** | 36,590 | 47,637 | 106,488 | 108,866 | 114,973 |

1
2
3
4

# EXHIBIT B

Priority Unsecured Creditors Distribution Schedule

5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**HENDRICKSON TRUCK LINES, INC.**
Priority unsecured claim monthly payments
*Based on Effective Date of Plan*

| | Starting Balance | POC NO. | Months 1-12 | Monthly 1-12 | Balance after 12 months | Months 13-24 10% | Months 13-24 plus 10% interest | Monthly 13-24 | Balance after 24 months | Months 25-35 20% interest | Months 25-36 20% plus interest | Monthly 25-36 | Balance after 36 months | Months 37-48 30% | Months 37-48 30% plus interest | Monthly 37-48 | Balance after 48 months | Months 49-60 Balance or 40% & interest | Monthly Payment |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Oregon Dept of Transportation | $ 438,167.87 | | 12% | 0.00 | $ 438,167.87 | $ 43,816.79 | $ 46,716.82 | $ 3,893.07 | $ 394,351.08 | $ 78,870.22 | $ 84,090.28 | $ 7,007.52 | $ 315,480.87 | $ 94,644.26 | $ 100,908.33 | $ 8,409.03 | $ 220,836.61 | $ 235,452.78 | $ 19,621.07 |
| CA Dept of Tax and Fee Admin. | $ 84,723.24 | 2 | 8% | 0.00 | $ 84,723.24 | $ 8,472.32 | $ 8,843.93 | $ 736.99 | $ 76,250.92 | $ 15,250.18 | $ 15,919.07 | $ 1,326.59 | $ 61,000.73 | $ 18,300.22 | $ 19,102.89 | $ 1,591.91 | $ 42,700.51 | $ 44,573.40 | $ 3,714.45 |
| Employment Development (EDD) | $ 415,881.43 | 5 | 4% | 0.00 | $ 415,881.43 | $ 41,588.14 | $ 42,494.71 | $ 3,541.23 | $ 374,293.29 | $ 74,858.66 | $ 76,990.49 | $ 6,374.21 | $ 299,434.63 | $ 89,830.39 | $ 91,788.59 | $ 7,649.05 | $ 209,604.24 | $ 214,173.37 | $ 17,847.78 |
| Internal Revenue Service | $ 240,219.66 | 5 | 5% | 0.00 | $ 240,219.66 | $ 24,021.97 | $ 24,677.52 | $ 2,056.46 | $ 216,197.69 | $ 43,239.54 | $ 44,419.54 | $ 3,701.63 | $ 172,958.16 | $ 51,887.45 | $ 53,303.45 | $ 4,441.95 | $ 121,070.71 | $ 124,374.70 | $ 10,364.56 |
| | | | | | | | | | | | | | | | | | | | |
| Total Cash Disbursements | $ 1,178,992.20 | | | | | | | $ 10,227.75 | | | | $ 18,409.95 | | | | $ 22,091.94 | | | $ 51,547.85 |

1
2
3
4

# EXHIBIT C
General Unsecured Creditors Distribution Schedule

5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# GENERAL UNSECURED CLASS DISTRIBUTION

| Claim | POC NO. | Claim Amount | | 100% Pro-rata | Monthly payment (Months 1-2) | | Monthly payment (Months 2-18) |
|---|---|---|---|---|---|---|---|
| Administrative Claims - Estimated Professional Fees for Debtor's counsel | N/A | $50,000.00 | | | $ 25,000.00 | | |
| **Class 4 Unsecured Claims** | | | | | | | |
| Daimler Chrysler Financial Services | | $ 200,533.38 | | $ 200,533.38 | $ - | | $ 12,533.34 |
| Kaiser Foundational Health Plan, Inc | | $ 132,890.00 | | $ 132,890.00 | $ - | | $ 8,305.63 |
| Phoenix Settlement Administration: Re: Sylvio ST. Amand | 8, 9, 10 | $ 32,850.00 | | $ 32,850.00 | $ - | | $ 2,053.13 |
| EDD - Class 8 - unsecured non-priority portion | 5 | $ 90,731.41 | | $ 90,731.41 | $ - | | $ 5,670.71 |
| Pitney Bowes (disputed) | 1 | $ 7,500.00 | | $ - | $ - | | $ - |
| | | **$ 464,504.79** | | **$ 457,004.79** | $ 25,000.00 | | $ 28,562.80 |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT D
Liquidation Analysis

# LIQUIDATION ANALYSIS

| Asset | Value | Liens | Exemption | Non-Exempt Equity |
|---|---|---|---|---|
| Cash on hand (11/27/19) | $73,319 | TAB Bank liens | | $0.00 |
| Account Receivables | $3,105,188.00 | TAB Bank liens | | $0.00 |
| Office Furniture | $2,500 | TAB Bank liens | | $0.00 |
| Office Equipment | $11,800 | TAB Bank liens | | $0.00 |
| 210 Trailers | $1,264,009 | TAB Bank lien | | $0.00 |
| 50 Trailers (Ciras, LLC) | $250,000 | $142,081.00 | | $107,919.00 |
| Claim against 19th Capital Group, LLC related to maintenace issues of leased trucks. Debtor listed claim amount at $863,963.00. | Contingent on litigation claims. | $0.00 | | $0.00 |
| Commercial Property located at 7080 Florin Perkins Road, Sacramento CA 95828 | $2,640,000 | TAB Bank lien / EDD / IRS Secured Tax liens in junior position | | $0.00 |
| TOTAL | | | | $107,919.00 |

| | |
|---|---|
| **Equity Available to Chapter 7 Estate** | $107,919.00 |
| **Claims** | |
| Est. Chapter 7 Trustee Fees and professionals | $21,563.67 |
| Est. Chapter 11 Adminsitrative Expenses | $50,000.00 |
| Total Administative fees | $71,563.67 |
| **Amount Available to unsecured creditors** | $36,355.33 |
| General Unsecured | $366,273.38 |
| Subordinated Insider Unsecured | $0.00 |
| Minimum % to general unsecured | 9.00% |
| Proposed % to general unsecured in Plan | 100% |

# EXHIBIT E

Stipulation resolving lease between Debtor and 19th
Capital Group, LLC

Vincent A. Gorski (CSB #263487)
**THE GORSKI FIRM, A.P.C.**
309 Truxtun Avenue
Bakersfield, CA 93301
Telephone:  (661) 952-9740
E-mail:  vgorski@thegorskifirm.com
Counsel for 19th Capital Group, LLC

**UNITED STATES BANKRUPTCY COURT**

**EASTERN DISTRICT OF CALIFORNIA, SACRAMENTO DIVISION**

| | |
|---|---|
| In Re:<br><br>HENDRICKSON TRUCK LINES, INC.<br><br>Debtor.<br><br>────────────────<br><br>19th CAPITAL GROUP, LLC<br><br>19th Capital,<br><br>vs.<br><br>HENDRICKSON TRUCK LINES, INC.<br><br>Respondent. | Case Number:  2019-27396-B-11<br><br>DCN:  TGF-001<br><br>Chapter 11<br><br>**STIPULATION RESOLVING 19th CAPITAL GROUP, LLC'S AMENDED MOTION FOR RELIEF FROM THE AUTOMATIC STAY**<br><br>Continued Hearing:<br>**Date:**       March 31, 2020<br>**Time:**       9:30 a.m.<br>**Location:**  501 I Street, 6th Floor<br>                    Courtroom 32;<br>                    Sacramento, CA 95814<br><br>**Honorable:**  Christopher D. Jaime |

**RECITALS**

A.      On August 16, 2018, Hendrickson Truck Lines, Inc. (the "Debtor") entered into a Master Lease Agreement (the "Lease") with 19th Capital Group, LLC (19th Capital) to lease from 19th Capital equipment and other property described in equipment schedules executed contemporaneously with the Lease and thereafter.

B.      On August 17, 2018, the Debtor executed an Equipment Schedule described as *Equipment Schedule Series INV-0019672-2* which incorporated the Lease by reference (the "August 17, 2018 Schedule").  A total of nineteen semi-trucks are set forth in the August 17, 2018 Schedule and subject to the Lease.

THE GORSKI FIRM, APC
www.TheGorskiFirm.com

THE GORSKI FIRM, APC
www.TheGorskiFirm.com

C.      On November 30, 2018, the Debtor executed an Equipment Schedule described as *Equipment Schedule Series INV-0021373-4* which incorporated the Lease by reference (the "November 30, 2018 Schedule").  A total of twenty-five semi-trucks are set forth in the November 30, 2018 Schedule and subject to the Lease.

D.      On June 18, 2019, the Debtor executed an Equipment Schedule described as *Equipment Schedule Series INV-0024418-2* which incorporated the Lease by reference (the "First June 18, 2019 Schedule").  A total of twenty-eight semi-trucks are set forth in the June 18, 2019 Schedule and subject to the Lease.

E.      On June 18, 2019, the Debtor executed an Equipment Schedule described as *Equipment Schedule Series INV-0024249-2* which incorporated the Lease by reference (the "Second June 18, 2019 Schedule").  A total of four semi-trucks are set forth in the Second June 18, 2019 Schedule and subject to the Lease.

F.      On May 10, 2019, the Debtor executed an Equipment Schedule described as *Equipment Schedule Series INV-0023956-2* which incorporated the Lease by reference (the "May 10, 2019 Schedule").  A total of thirty-five semi-trucks are set forth in the May 10, 2019 Schedule and subject to the Lease.

G.      At all times relevant hereto, 19th Capital was, and remains the leasor of the eighty-nine semi-trucks set forth in Exhibit "A" all of which are subject to the terms of the Lease.

H.      The Lease is a true lease.  Accordingly, the Debtor does not have any equity in the semi-trucks or personal property subject to the Lease.

I.      On November 27, 2019 (the "Petition Date"), the Debtor filed for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code").

J.      Pursuant to Bankruptcy Code Section 365(d)(5), a debtor in possession in a Chapter 11 case is required to make all payments first arising from or after 60 days after the filing of a bankruptcy petition.  In this case, the Debtor has not made any payments arising from or after the 60th day after the Petition Date.

K.    On February 6, 2020, 19th Capital filed a motion for relief from the automatic stay (the "Motion for Relief from Stay") to exercise its rights and remedies under applicable state law for lack of adequate protection and Debtor's failure to comply with the terms of the Lease and Bankruptcy Code Section 365(d)(5).

L.    The eighty-nine semi-trucks set forth in Exhibit "A" are the vehicles subject to 19th Capital's Motion for Relief from Stay.

M.    The lease related to one of the semi-trucks, a 2015 International ProStar assigned VIN 3HSDJAPR1FN725008, expired after the Petition Date.

N.    The total past due amount due under the Lease on the Petition Date was $154,385.00.

O.    Pursuant to Bankruptcy Code Section 365(d)(5), the Debtor is obligated to make the Lease payments for February 2020 and March 2020.  The Debtor has not made the February 2020 or March 2020 payment.  The February 2020 and March 2020 lease payments are $132,950.00 for each month.

P.    19th Capital asserts that Debtor owes 19th Capital in excess of $70,000.00 pursuant to the Lease for NSF, late fees, interest, total loss billing and mileage billing.

Q.    Debtor asserts that 19th Capital is financially responsible for certain claims for maintenance and services related to some of the trucks subject to the Lease.  In its opposition to the Motion for Relief from Stay, Debtor asserts that 19th Capital is responsible for an aggregate of $606,250.00 related to alleged costs for repair of the trucks, towing fees, and lost revenue.  19th Capital vehemently denies any responsibility for these alleged fees and costs related to vehicle maintenance, service, repair, towing fees, and lost revenue.

R.    The Debtor and 19th Capital reached an agreement fully resolving the Motion for Relief from Stay.

**THEREFORE, THE PARTIES STIPULATE AND AGREE AS FOLLOWS:**

1.    Contemporaneous with executing this stipulation, the Debtor shall execute and return to 19th Capital the lease renewal attached hereto and incorporated herewith as

THE GORSKI FIRM, APC
www.TheGorskiFirm.com

Exhibit "B" related to the 2015 International ProStar (VIN 3HSDJAPR1FN725008).

      2.        Effective February 1, 2020, the monthly rent under the Lease shall be $132,950.00.  Effective March 1, 2020, the monthly rent under the Lease shall be $132,050.00

      3.        The lease payments for February 2020 shall be paid in two equal installments of $66,475.00.  The first installment is due on March 15, 2020.  The second installment is due on April 15, 2020.  The total amount due on March 15, 2020 and April 15, 2020, including the installment payments for the February 2020 rent, shall be $198,525.00.

      4.        Effective May 1, 2020, the Debtor shall commence repayment on the pre-petition past due lease payments.  The pre-petition past due lease payments shall be made in equal installments based on the remaining number of payments due for each lease. Attached hereto and incorporated herewith as Exhibit "C" is a spreadsheet setting forth each lease term, start date, end date, months for the respective repayment, and additional monthly payment.

      5.        Effective May 15, 2020, the total monthly payment, including the normal monthly rent plus the repayment on pre-petition past due lease payments shall be $157,132.49.  This total payment will be reduced by the respective "Additional Monthly Payment" set forth in Exhibit "C" as each lease matures.

      6.        Effective upon the execution of this stipulation by the parties, all payments due pursuant to this stipulation and the Lease shall be due on the 15th day of each month (the "Due Date").

      7.        Unless otherwise direct in writing by 19th Capital, payments due pursuant to this stipulation and the Lease shall be wired to 19th Capital pursuant to the following wire instructions:

```
Name of Bank:        BMO Harris Bank
Bank ABA Number:     071000288
SWIFT Code:          HATRUS44
Account Number:      354-301-4
Account Name:        19th Capital Group, LLC., Lease Payments Account
Account Type:        Corporate Checking
Bank City and State: Chicago, IL
```

**THE GORSKI FIRM, APC**
**www.TheGorskiFirm.com**

8. Upon the execution of this stipulation by all parties, the Debtor waives any claims it asserts through the date this stipulation is executed for fees and costs related to vehicle maintenance, service and repair, towing fees, and lost revenue.

9. Upon the execution of this stipulation by all parties, 19th Capital waives all claims through the date this stipulation is executed by the parties to NSF, late fees, interest, total loss billing and mileage billing it is entitled to pursuant to the Lease.

10. The Debtor's treatment of 19th Capital's claims in the Chapter 11 plan filed in this case shall be consistent with this stipulation.

11. In the event the Debtor fails to cure any default under the stipulation or Lease within five days after written notice thereof directed to the Debtor (at the address indicated in its bankruptcy petition) and the Debtor's counsel of record, 19th Capital may submit to the Court, ex parte, a proposed order granting relief from the automatic stay (the "Proposed Order"), along with an affidavit or declaration attesting to the Debtor's failure to cure timely its default, in which case the Court shall enter the proposed order granting 19th Capital relief from the automatic stay to enforce all of its rights and remedies under the Lease and applicable bankruptcy and non-bankruptcy law.

12. Notwithstanding anything contained in this stipulation to the contrary, the Debtor shall be entitled to a maximum of 3 notices of default and opportunities to cure pursuant to the preceding paragraphs. Once the Debtor has defaulted this number of times on the obligations imposed by this stipulation and has been served with this number of notices of default, 19th Capital is relieved of any obligation to serve additional notices of default or to provide additional opportunities to cure. If an event of default occurs thereafter, 19th Capital will be entitled, without first serving a notice of default or providing the Debtor with an opportunity to cure, to file and serve a declaration under penalty of perjury setting forth in detail the Debtor's failures to perform under this stipulation or Lease, together with a Proposed Order, which the court may enter without further notice or hearing.

13.     The Proposed Order described in paragraphs 11 and 12 will terminate the automatic stay imposed by Bankruptcy Code Section 362 as to all vehicles and personal property subject to the Lease and this stipulation.  The Proposed Order shall waive the 14-day stay pursuant to Rule 4001(a)(3) of the Federal Rules of Bankruptcy Procedure.  Upon the clerk's entry of the Proposed Order on the docket in this case, 19th Capital shall be immediately entitled to exercise all rights pursuant to state law to repossess and sell the property subject to the Lease.

**IT IS SO STIPULATED:**

Date: _____          THE GORSKI FIRM, APC


_____
Vincent A. Gorski, Esq.
Counsel for 19th Capital Group, LLC


Date: _____          LAW OFFICES OF GABRIEL LIBERMAN, APC


_____
Gabriel E. Liberman
Counsel for Hendrickson Truck Lines, Inc


Date: _____          19th Capital Group, LLC


_____
James Zender,
Vice President & General Counsel


Date: _____          Hendrickson Truck Lines, Inc.


_____
By: _____
Title: _____

THE GORSKI FIRM, APC
www.TheGorskiFirm.com

| VIN | Fleet Truck Name | Account: Account Name |
| --- | --- | --- |
| 3HSDJAPR9GN284200 | FTRUCK-09373 | Hendrickson Truck Lines, Inc. |
| 3HSDJAPR3GN285794 | FTRUCK-10084 | Hendrickson Truck Lines, Inc. |
| 3HSDJAPR2GN285527 | FTRUCK-09365 | Hendrickson Truck Lines, Inc. |
| 3HSDJAPR7GN285443 | FTRUCK-10088 | Hendrickson Truck Lines, Inc. |
| 3HSDJAPR8GN287511 | FTRUCK-10083 | Hendrickson Truck Lines, Inc. |
| 3HSDJAPR5GN287983 | FTRUCK-10086 | Hendrickson Truck Lines, Inc. |
| 3HSDJAPR1GN287494 | FTRUCK-09784 | Hendrickson Truck Lines, Inc. |
| 3HSDJAPR7GN287497 | FTRUCK-10089 | Hendrickson Truck Lines, Inc. |
| 3HSDJAPR5GN285828 | FTRUCK-09357 | Hendrickson Truck Lines, Inc. |
| 3HSDJAPR0GN284215 | FTRUCK-09360 | Hendrickson Truck Lines, Inc. |
| 3HSDJAPR8GN111204 | FTRUCK-09353 | Hendrickson Truck Lines, Inc. |
| 3HSDJAPR2GN030473 | FTRUCK-09355 | Hendrickson Truck Lines, Inc. |
| 3HSDJAPR3GN287495 | FTRUCK-10085 | Hendrickson Truck Lines, Inc. |
| 3HSDJAPR1GN284191 | FTRUCK-09363 | Hendrickson Truck Lines, Inc. |
| 3HSDJAPR4GN284203 | FTRUCK-09368 | Hendrickson Truck Lines, Inc. |
| 3HSDJAPR7GN285863 | FTRUCK-10271 | Hendrickson Truck Lines, Inc. |
| 3HSDJAPR0GN284182 | FTRUCK-10268 | Hendrickson Truck Lines, Inc. |
| 3HSDJAPR6GN284199 | FTRUCK-10087 | Hendrickson Truck Lines, Inc. |
| 3HSDJAPR9GN285086 | FTRUCK-10269 | Hendrickson Truck Lines, Inc. |
| 3HSDJAPR2GN111392 | FTRUCK-09782 | Hendrickson Truck Lines, Inc. |
| 3HSDJAPR8GN287489 | FTRUCK-10270 | Hendrickson Truck Lines, Inc. |
| 3HSDJAPR5GN750611 | FTRUCK-09781 | Hendrickson Truck Lines, Inc. |
| 3HSDJAPR0GN111374 | FTRUCK-09354 | Hendrickson Truck Lines, Inc. |
| 3HSDJAPR4GN030717 | FTRUCK-10136 | Hendrickson Truck Lines, Inc. |
| 3HSDJAPR8GN285046 | FTRUCK-10289 | Hendrickson Truck Lines, Inc. |
| 3HSDJAPR9GN030714 | FTRUCK-10139 | Hendrickson Truck Lines, Inc. |
| 3HSDJAPR0GN030438 | FTRUCK-10149 | Hendrickson Truck Lines, Inc. |
| 3HSDJAPR1GN030481 | FTRUCK-10147 | Hendrickson Truck Lines, Inc. |
| 3HSDJAPR6GN030430 | FTRUCK-10134 | Hendrickson Truck Lines, Inc. |
| 3HSDJAPR5GN284887 | FTRUCK-10299 | Hendrickson Truck Lines, Inc. |
| 3HSDJAPR9GN750529 | FTRUCK-10130 | Hendrickson Truck Lines, Inc. |
| 3HSDJAPR3GN750526 | FTRUCK-10127 | Hendrickson Truck Lines, Inc. |
| 3HSDJAPR3GN111448 | FTRUCK-10272 | Hendrickson Truck Lines, Inc. |
| 3HSDJAPR5GN287515 | FTRUCK-10123 | Hendrickson Truck Lines, Inc. |
| 3HSDJAPRXGN285520 | FTRUCK-10291 | Hendrickson Truck Lines, Inc. |
| 3HSDJAPR1GN284210 | FTRUCK-10122 | Hendrickson Truck Lines, Inc. |
| 3HSDJAPR6GN030704 | FTRUCK-10143 | Hendrickson Truck Lines, Inc. |
| 3HSDJAPR3GN030708 | FTRUCK-10141 | Hendrickson Truck Lines, Inc. |
| 3HSDJAPRXGN111432 | FTRUCK-10297 | Hendrickson Truck Lines, Inc. |
| 3HSDJAPRXGN285792 | FTRUCK-10279 | Hendrickson Truck Lines, Inc. |
| 3HSDJAPR9GN285847 | FTRUCK-10275 | Hendrickson Truck Lines, Inc. |
| 3HSDJAPRXGN285436 | FTRUCK-10120 | Hendrickson Truck Lines, Inc. |
| 3HSDJAPR8GN030753 | FTRUCK-10295 | Hendrickson Truck Lines, Inc. |

# EXHIBIT "A"

| | | |
|---|---|---|
| 3HSDJAPR5GN030483 | FTRUCK-10145 | Hendrickson Truck Lines, Inc. |
| 3HSDJAPR8GN285452 | FTRUCK-10277 | Hendrickson Truck Lines, Inc. |
| 3HSDJAPR9GN030812 | FTRUCK-10121 | Hendrickson Truck Lines, Inc. |
| 3HSDJAPR6GN111394 | FTRUCK-10285 | Hendrickson Truck Lines, Inc. |
| 3HSDJAPR6GN288110 | FTRUCK-10119 | Hendrickson Truck Lines, Inc. |
| 3HSDJAPR2GN284894 | FTRUCK-10282 | Hendrickson Truck Lines, Inc. |
| 3HSDJAPR2GN284216 | FTRUCK-10283 | Hendrickson Truck Lines, Inc. |
| 3HSDJAPR9GN285802 | FTRUCK-10292 | Hendrickson Truck Lines, Inc. |
| 3HSDJAPR3GN285486 | FTRUCK-10281 | Hendrickson Truck Lines, Inc. |
| 3HSDJAPR2GN030442 | FTRUCK-10148 | Hendrickson Truck Lines, Inc. |
| 3HSDJAPR1GN285504 | FTRUCK-10288 | Hendrickson Truck Lines, Inc. |
| 3HSDJAPRXGN284903 | FTRUCK-09361 | Hendrickson Truck Lines, Inc. |
| 3HSDJAPR1GN030450 | FTRUCK-10132 | Hendrickson Truck Lines, Inc. |
| 3HSDJAPR6GN285840 | FTRUCK-10276 | Hendrickson Truck Lines, Inc. |
| 3HSDJAPR8GN030476 | FTRUCK-10129 | Hendrickson Truck Lines, Inc. |
| 3HSDJAPRXGN030480 | FTRUCK-10150 | Hendrickson Truck Lines, Inc. |
| 3HSDJAPR3GN111451 | FTRUCK-10273 | Hendrickson Truck Lines, Inc. |
| 3HSDJAPR3GN030482 | FTRUCK-10146 | Hendrickson Truck Lines, Inc. |
| 3HSDJAPR2GN030702 | FTRUCK-10144 | Hendrickson Truck Lines, Inc. |
| 3HSDJAPR0GN030939 | FTRUCK-10125 | Hendrickson Truck Lines, Inc. |
| 3HSDJAPR4GN288087 | FTRUCK-10124 | Hendrickson Truck Lines, Inc. |
| 3HSDJAPRXGN287963 | FTRUCK-10116 | Hendrickson Truck Lines, Inc. |
| 3HSDJAPR2GN285866 | FTRUCK-10298 | Hendrickson Truck Lines, Inc. |
| 3HSDJAPR8GN030459 | FTRUCK-10126 | Hendrickson Truck Lines, Inc. |
| 3HSDJAPR0GN750452 | FTRUCK-10133 | Hendrickson Truck Lines, Inc. |
| 3HSDJAPR5GN030709 | FTRUCK-10140 | Hendrickson Truck Lines, Inc. |
| 3HSDJAPR7GN285412 | FTRUCK-10286 | Hendrickson Truck Lines, Inc. |
| 3HSDJAPR4GN030474 | FTRUCK-10128 | Hendrickson Truck Lines, Inc. |
| 3HSDJAPR5GN750298 | FTRUCK-10296 | Hendrickson Truck Lines, Inc. |
| 3HSDJAPR7GN285474 | FTRUCK-10278 | Hendrickson Truck Lines, Inc. |
| 3HSDJAPR0GN285865 | FTRUCK-09783 | Hendrickson Truck Lines, Inc. |
| 3HSDJAPR5GN285800 | FTRUCK-10280 | Hendrickson Truck Lines, Inc. |
| 3HSDJAPR9GN284195 | FTRUCK-10118 | Hendrickson Truck Lines, Inc. |
| 3HSDJAPR6GN030797 | FTRUCK-10135 | Hendrickson Truck Lines, Inc. |
| 3HSDJAPR9GN284214 | FTRUCK-10294 | Hendrickson Truck Lines, Inc. |
| 3HSDJAPRXGN030950 | FTRUCK-10293 | Hendrickson Truck Lines, Inc. |
| 3HSDJAPRXGN030706 | FTRUCK-10142 | Hendrickson Truck Lines, Inc. |
| 3HSDJAPRXGN750538 | FTRUCK-10117 | Hendrickson Truck Lines, Inc. |
| 3HSDJAPR0GN030715 | FTRUCK-10138 | Hendrickson Truck Lines, Inc. |
| 3HSDJAPR2GN030716 | FTRUCK-10137 | Hendrickson Truck Lines, Inc. |
| 3HSDJAPR1GN750539 | FTRUCK-10131 | Hendrickson Truck Lines, Inc. |
| 3HSDJAPR1FN725008 | FTRUCK-08662 | Hendrickson Truck Lines, Inc. |
| 3HSDJAPR6GN285532 | FTRUCK-10287 | Hendrickson Truck Lines, Inc. |
| 3HSDJAPR7GN285846 | FTRUCK-10274 | Hendrickson Truck Lines, Inc. |

# EXHIBIT "A"

3HSDJAPR0GN285087     FTRUCK-10284         Hendrickson Truck Lines, Inc.
3HSDJAPR1GN284899     FTRUCK-10290         Hendrickson Truck Lines, Inc.

**EXHIBIT "A"**

# 19th Capital Group LLC and its assigns

EQUIPMENT SCHEDULE SERIES INV-0027192 - 12

This Schedule is executed pursuant to that certain Master Lease Agreement dated November 16, 2018 (the "Lease"; which is incorporated herein by reference). This Schedule, incorporating by reference the terms and conditions of the Lease, constitutes a separate instrument of lease effective March 12, 2020 (the "Effective Date"). To the extent of any conflict or inconsistency between the terms of this Schedule and the Lease, the terms of this Schedule shall prevail.

| VIN | Year | Make | Model | Residual | Start Date | Projected End Date* |
|---|---|---|---|---|---|---|
| 3HSDJAPR1FN725008 | 2015 | International | ProStar | $5,000.00 | | |

| VIN | Initial Term Rent | Basic Rent | Damage Waiver | Non-Trucking Liability | Prep Deposit | Deposit |
|---|---|---|---|---|---|---|
| 3HSDJAPR1FN725008 | $ 44.38 | $ 1,350.00 | | | $ .00 | $ .00 |

Base Term: 24 monthly payments after each Start Date

**\*Projected End Date as set forth above is contingent upon full and complete compliance with all of the terms and provisions, including without limitation payment obligations (and being current thereon), of this Schedule, the Lease, and documents related thereto. Such Projected End Date may be extended, in the sole discretion of the Lessor, if the terms and provisions are not completed.**

**Lessee acknowledges that the "VIN" and "Start Date" in the above table may be completed by Lessor subsequent to the execution of this Schedule ("Additional Information"). Lessee hereby approves the completion of such Additional Information and agrees that such Additional Information is accepted, valid, and binding.**

1.  EQUIPMENT. The Equipment leased hereunder shall be as set forth above.

2.  TERM. Upon and after the Start Date, the Equipment shall be subject to the terms and conditions provided herein and in the Lease. A full term of lease with respect to said Equipment shall commence on the first of the month following the Start Date and shall extend for 24 full monthly payments ("Term"). The Start Date shall be as provided above, and will be the earlier of the date the Equipment is delivered or received by Lessee (or its agent) or ninety-six (96) hours after the time Lessor notifies Lessee that said Equipment is available for delivery.

3.  RENT

**EXHIBIT "B"**

(a)     During the period from the Start Date to the first of the following month (the "Interim Term"), the pro-rated daily rent for said Equipment shall be as specified above, and such Interim Term shall be in addition to the Term. The Interim Term Rent as provided above shall be due on or before the Start Date, and such Interim Term Rent shall be due to Lessor as provided in such invoice for Interim Term Rent or prior to the delivery of the Equipment, whichever is earlier.

(b)     From and after the Start Date, the rent for said Equipment during the Base Term of this Lease shall be as specified above. Rent payments shall be made, in advance, via ACH (or such other method as deemed reasonable by Lessor) on the first of each month or as soon as practicable thereafter for each month during the Base Term of this Lease. Any payment obligations of Lessee in the Lease or this Schedule shall be made in United States dollars.

(c)     ACH Authorization. Lessee hereby authorizes Lessor or its agent to initiate single or recurring electronic debit entries from a specified bank account held by a financial institution Lessee designates through the Automated Clearing House (ACH) network. Lessee hereby authorizes Lessor to initiate such debit entries in the amount of Lessee's Rent obligations, plus all other amounts due at the time not exceeding $100.00 (or in such other amount as Lessee may specify). Lessee further agrees that in the event the aforementioned debit entries are not completed, then Lessor may use any other payment method Lessee has provided, including but not limited to credit cards. Lessee shall reimburse, to the extent permitted by law, the Lessor for any bank fees, credit card fees, or any other fees incurred by Lessor in processing payment of Rent.

(d)     Deposit. A refundable security deposit for the Equipment in the amount as provided above ("Deposit") must be made to Lessor prior to the Start Date. Such Deposit will be held by Lessor as security until successful completion of the Term, and may be refunded to Lessee so long as Lessee is in full compliance with, and completes, the Lease, this Schedule, and any related documents. Lessor reserves the right to offset the Deposit return amount by any expense it incurs arising out of the Lease.

A deposit as indicated above shall be paid for each piece of Equipment before the Equipment will be sent through the shop and prepared for delivery ("Prep Deposit"). Lessor shall not begin prepping a piece of Equipment before the Prep Deposit has been paid. Lessor shall invoice Lessee for the Prep Deposit and such invoice must be paid within ten (10) business days. Equipment will not be held past ten (10) business days from the invoice date and failure to pay the invoice may result in termination of the Lease. The Prep Deposit shall be applied to the first month's rent.

(e)     Lessee may not operate the Equipment more than 10,000 miles in any single month ("Mileage Limitation"). If the actual miles on the Equipment exceeds the Mileage Limitation, then, in addition to all other rights and remedies under this Lease, Lessor will assess a surcharge of eighteen (18) cents per mile for all miles over the Mileage Limitation ("Surcharge"), and Lessee agrees to pay this Surcharge in addition to all other amounts due Lessor under this Lease. The Surcharge may be invoiced at any time, but in any event annually, and such Surcharge shall be due within five (5) days of such invoice. Lessee agrees that such surcharge may be included in the Rent owed by Lessee. Lessee shall not be entitled to a credit or carry forward if actual miles is less than the Mileage Limitation. Lessee shall maintain records and logs that illustrate accurate mileage run, and must provide such records and logs to Lessor or its agent at the end of each calendar quarter or as requested by Lessor or its agent if prior to calendar quarter end. The Surcharge on the Equipment, once paid, may be

**EXHIBIT "B"**

applied towards its residual if

i) the Equipment Schedule gives a Residual for the Equipment,

ii) there are no defaults under the Lease, and

iii) Lessee requests, in writing, the Surcharge be applied to the Residual in its notice to Lessor of its exercising of the purchase option. No Surcharge accrued on a piece of equipment may be applied to the Residual on another piece of equipment.

4.    DELIVERY AND CONDITION OF EQUIPMENT.

(a)    Delivery and acceptance of the Equipment shall occur upon the earlier of: 1) the Start Date.; 2) Lessee or its agents taking or being given possession of the Equipment, or 3) the execution of a delivery and/or acceptance certificate.

(b)    The Equipment will be delivered to Lessee AS IS, WHERE IS. Lessor disclaims any warranties, express or implied, as to the condition of the Equipment, including, but not limited to, any implied warranty of merchantability or fitness for a particular purpose. Lessor does not assume, or authorize any person to assume on behalf of Lessor, any liability in connection with the lease of the Equipment. Lessor's above disclaimer of warranties does not in any way affect the terms of any applicable warranties from the manufacturer of the Equipment.

(c)    Lessor may register and title the Equipment, as well as handle the initial Federal Highway Use Tax, prior to the Start Date. Lessee shall be responsible for the Administrative Charge, which includes titling, registration, Federal Highway Use Tax, and any documents fees, for each of the Equipment as provided in this Schedule (collectively, the "Administrative Charges") on or before the Start Date. Lessee acknowledges and accepts that Lessor may not register such Equipment until Lessor has received the Administrative Charges from Lessee, and that Administrative Charges are non-refundable regardless of whether Lessee has taken possession of the Equipment. Further, Lessor agrees to handle the registration renewal and Federal Highway Use Tax, and Lessee agrees to pay the Administrative Charges immediately upon receipt of an invoice from Lessor, and Lessee acknowledges and accepts that such Administrative Charges may increase given changes in costs to registration or Federal Highway Use Tax and that Lessee will be responsible for paying any increases in the Administrative Charges. Other than as set forth above, Lessee shall pay (including any penalties or interest) for all permits, plates, licenses, fees, or taxes (such taxes shall include but not be limited to personal property taxes, sales taxes, use taxes, mileage or ton mileage taxes, fuel taxes, highway and bridge tolls, and any other taxes and fees) required by law and/or Lessee's business or now or hereafter imposed upon the operation or use of the Equipment. Lessee shall be solely responsible for paying for fuel taxes and handling any fuel tax reporting, and shall indemnify Lessor and its affiliates for such.

(d)    Lessee will be invoiced, at the reasonable market price per gallon as incurred by Lessor or its agent, for the cost of fuel residing within each piece of Equipment when delivery of the Equipment occurs as stated above. Lessee agrees to pay such fuel costs when due, as specified on the invoice, and the amount invoiced shall be considered an Other Payment, as defined in the Lease.

5.    LESSEE'S CONFIRMATION. Lessee hereby confirms and warrants to Lessor that the Equipment: (a) has been made available, accepted, and inspected; and (b) is a part of the "Equipment" referred to in the Lease and is taken subject to all terms and conditions therein and herein provided. Lessee hereby represents and warrants to Lessor that, as of the Effective Date, there is no Default or Event of Default under any Schedule or any other Lease Document (as such terms are defined in the Lease). All representations and warranties provided by Lessee in favor of

**EXHIBIT "B"**

6.    TITLE; GRANTING CLAUSE.

(a)    Lessee and Lessor intend that: (1) this Schedule, incorporating by reference the terms of the Lease, constitutes a true "lease" and a "finance lease" as such terms are defined in Article 2A of the UCC ("Article 2A") and not a sale or retention of a security interest; and (2) Lessor or Lessor's creditor is and shall remain the owner of each item of Equipment (unless sold by Lessor pursuant to any Lease Document), and Lessee shall not acquire any right, title, equity, or interest in or to such Equipment except the right to use it in accordance with the terms of the Lease. Pursuant to Article 2A,

(b)    In order to secure the prompt payment of the Rent and all of the other amounts from time to time outstanding with respect to the Lease and this Schedule, and the performance and observance by Lessee of all of the provisions hereof and thereof and of all of the other Lease Documents, and the payment and performance of all other indebtedness, obligations or liabilities of Lessee to Lessor or to any affiliate of Lessor, now existing or hereafter arising, Lessee hereby collaterally assigns, grants, and conveys to Lessor, a security interest in and lien on all of Lessee's right, title and interest in and to all of the following (whether now existing or hereafter created, and including any other collateral described on any amendment hereto; the "Collateral"): (1) (if contrary to the parties' intentions a court determines that this Schedule is not a true "lease" under the UCC) the Equipment described in this Schedule or otherwise covered thereby (including all inventory, fixtures or other property comprising the Equipment), together with all related software (embedded therein or otherwise) and general intangibles, all additions, attachments, accessories and accessions thereto whether or not furnished by the manufacturer; (2) all subleases, chattel paper, accounts, security deposits, and general intangibles relating thereto, and any and all substitutions, replacements or exchanges for any such item of Equipment or other collateral, in each such case in which Lessee shall from time to time acquire an interest; and (3) any and all insurance and/or other proceeds of the property and other collateral in and against which a security interest is granted hereunder. The collateral assignment, security interest and lien granted herein shall survive the termination, cancellation or expiration of this Schedule until such time as Lessee's obligations under the Lease, this Schedule and the other Lease Documents are fully and indefeasibly discharged.

(c)    If contrary to the parties' intentions a court determines that this Schedule is not a true "lease", the parties agree that in such event Lessee agrees that: (1) with respect to the Equipment, in addition to all of the other rights and remedies available to Lessor under the Lease or hereunder upon the occurrence of an Event of Default, Lessor shall have all of the rights and remedies of a first priority secured party under the UCC; and (2) any obligation to pay Basic Rent or any Other Payment, to the extent constituting the payment of interest, shall be at an interest rate that is equal to the lesser of the maximum lawful rate permitted by applicable law or the effective interest rate which would result in the same payment terms.

(d)    Lessee further acknowledges that Lessor may, with or without notice or consent of Lessee, sell or grant a security interest in the Equipment and in such event Lessee's rights in and to the Equipment shall be subject and subordinate to the interest and rights, including the right of possession, of any such purchase or holder of a security interest in the Equipment.

Lessor in any of the Lease Documents shall be true and correct as of the Effective Date of this Schedule (Lessee's execution and delivery of the Schedule shall constitute Lessee's acknowledgment of the same).

**EXHIBIT "B"**

(e) Lessee acknowledges that a third party lender, and their respective successors, transferees and assigns ("Creditor") may possess an ownership or security interest in the Equipment subject to this Schedule, and the rights to proceeds, rental and other payments hereunder. Lessee also acknowledges and agrees that: (1) upon notice from Creditor it will make rental and other payments due hereunder directly to Creditor; and (2) it will not hold Creditor liable for performance of any of Lessor's obligations under this Lease, nor will it withhold any payments from Creditor on the account of Lessor's nonperformance.

7. TAX INDEMNITY. Lessee hereby represents and certifies, under penalty of perjury, that, with respect to this Schedule and the Lease: (i) Lessee intends that more than fifty percent (50%) of the use of the Equipment is to be in its trade or business; and (ii) Lessee has been advised and hereby agrees that Lessee will NOT be treated as the owner of the Equipment for federal income tax purposes.

Lessee hereby agrees to indemnify Lessor pursuant to this Schedule and the Lease for any claims, losses, costs, damages, and expenses, of whatsoever kind and nature, including legal fees resulting from Lessee's breach of the above representation and certification. The obligations of Lessee under this Section shall survive the expiration or termination of the term of the Lease with respect to this Schedule.

8. ADDITIONAL REMEDIES. (a) Upon the occurrence of an Event of Default, in addition to the remedies specified in the Lease, Lessor may: (1) proceed at law or in equity, to enforce specifically Lessee's performance or to recover damages; (2) declare this Schedule in default, and cancel this Schedule or otherwise terminate Lessee's right to use the Equipment and Lessee's other rights, but not its obligations, hereunder and Lessee shall immediately assemble, make available and, if Lessor requests, return the Equipment to Lessor in accordance with the terms of the Lease and this Schedule; (3) enter any premises where any item of Equipment is located and take immediate possession of and remove (or disable in place) such item (and/or any unattached parts) by self-help, summary proceedings or otherwise without liability; (4) use Lessee's (or their agents/affiliates) premises for storage without cost or liability; (5) sell, re-lease or otherwise dispose of any or all of the Equipment, whether or not in Lessor's possession, at public or private sale, with or without notice to Lessee, and apply or retain the net proceeds of such disposition, with Lessee remaining liable for any deficiency and with any excess being retained by Lessor; (6) enforce any or all of the preceding remedies with respect to any related Collateral, and apply any deposit or other cash collateral, or any proceeds of any such Collateral, at any time to reduce any amounts due to Lessor; (7) demand and recover from Lessee all liquidated damages and all Other Payments whenever the same shall be due; and (8) exercise any and all other remedies allowed by applicable law, including the UCC.

Upon the occurrence of the Event of Default described in Section 15(j) of the Lease, the remedy provided in Clause (7) above shall be automatically exercised without the requirement of prior written notice to Lessee or of any other act or declaration by Lessor, and any liquidated damages shall be immediately due and payable. If an Event of Default occurs and Lessor engages in repossession or other self help and takes possession of the Equipment with other property contained in, upon, or attached to the Equipment, Lessor may take possession of such property and hold it in Lessor's possession or in public storage for the account and at the expense of Lessee or dispose of such property with no further liability. Lessee shall indemnify Lessor and its successors and assigns for any claims or losses related to property contained in or on the Equipment when Lessor takes possession of such Equipment.

9. OPTION TO RENEW. Provided that no Default or Event of Default has then occurred and is continuing, Lessee shall have the option to renew the Lease, at the expiration of the term of this Schedule, with respect to all but not less than all of the Equipment, on the terms and conditions of the Lease, upon sixty (60) days' written notice to Lessor and for a negotiated renewal term and rent as then agreed by the parties. Any Equipment

**EXHIBIT "B"**

10. OPTION TO PURCHASE. Provided that no Default or Event of Default has then occurred and is continuing, Lessee may have the option to purchase, upon the expiration of the term of the Lease with respect to this Schedule, or of any subsequent renewal term, if applicable, all but not less than all of the Equipment (unless agreed otherwise in writing) upon the following terms and conditions: If Lessee desires to exercise this option it shall give Lessor written notice of its intention to exercise this option to purchase at least sixty (60) days before expiration of the term of the Lease with respect to this Schedule. Thereupon, at the expiration of the term of the Lease with respect to this Schedule, Lessee shall pay to Lessor in cash any Rent due on that date plus the residual value for the Equipment so purchased, together with all taxes and charges upon sale.

that is not turned in to Lessor when due will be assessed the daily Interim Rate Rent or the prevailing market rate (whichever is greater) for each day Lessee maintains possession or has not delivered such Equipment directly to Lessor.

11. DISCLAIMER. There is no restriction (either express or implied) on any disclosure or dissemination of the tax treatment or tax structure of the transactions contemplated by this Schedule or any documents executed in connection herewith. Further, each party hereto acknowledges that it has no proprietary rights to any tax matter or tax idea or to any element of the transaction structure contemplated by this Schedule; and each party hereto (and any employee, representative or agent of any party hereto) may disclose to any and all persons (without limitation of any kind), the Federal tax treatment and Federal tax structure of the transaction contemplated by this Schedule. This Section 11 is intended to cause the transaction contemplated by this Schedule to be treated as not having been offered under conditions of confidentiality for purposes of Section 1.6011-4(b)(3) (or any successor provision) of the Treasury Regulations promulgated under Section 6011 of the Code and Section 6111 of the Code and the Treasury Regulations promulgated thereunder; and shall be construed in a manner consistent with such purpose.

12. MISCELLANEOUS. Photocopies, facsimile transmission, transmission by electronic mail in "portable document format" (".pdf") form or other electronic transmission of signatures shall be deemed original signatures and shall be fully binding on the parties to the same extent as original signatures.

19th Capital Group LLC and its assigns

Lessor

By: _____ [SEAL]
Name: Katie McKnight
Title: Authorized Agent
Date: _____

Hendrickson Truck Lines, Inc

Lessee

By: _____ [SEAL]
Name: _____
Title: _____
Date: _____

**EXHIBIT "B"**

# EXHIBIT "B"

| Ele # | Term | Start Date | End date | # of units @ 3/6/2020 | Matured | Total past due | Past Due Amount Pre Petition (Filing Date 11/27/19) | Past Due Period of Jan 26-March 31 (Lump Sum Payment) | Month on repayment plan for Past Due Amnts Through Jan 26 | Additional Monthly Payment |
|---|---|---|---|---|---|---|---|---|---|---|
| ELE-FL-03100 | 36 Mo | 10/1/2019 | 9/30/2022 | 28 | No | $ 189,000.00 | $ 113,400.00 | $ 75,600.00 | 29 | $ 3,910.34 |
| ELE-FL-03099 | 36 Mo | 7/1/2019 | 6/30/2022 | 4 | No | $ 27,000.00 | $ 16,200.00 | $ 10,800.00 | 26 | $ 623.08 |
| ELE-FL-03070 | 36 Mo | 6/1/2019 | 5/31/2022 | 35 | No | $ 201,250.00 | $ 120,750.00 | $ 80,500.00 | 25 | $ 4,830.00 |
| ELE-FL-02823 | 24 Mo | 2/1/2019 | 1/31/2021 | 21 | No | $ 234,130.68 | $ 139,630.68 | $ 94,500.00 | 9 | $ 15,514.52 |
| ELE-FL-02575 | 24 Mo | 3/1/2020 | 2/29/2022 | 1 | Renewal | $ 8,100.00 | $ 4,500.00 | $ 3,600.00 | 22 | $ 204.55 |
|  |  |  |  | 89 |  | $ 659,480.68 | $ 394,480.68 | $ 265,000.00 |  |  |

# EXHIBIT "C"

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT E
## Debtor's Plan of Reorganization

**38**
**LAW OFFICES OF GABRIEL LIBERMAN, APC**
Gabriel E. Liberman (SBN 303010)
Gabe@4851111.com
1545 River Park Drive, Suite 530
Sacramento, California 95815
Telephone:     (916) 485-1111
Facsimile:     (916) 485-1111

Attorney for HENDRICKSON TRUCK LINES, INC.

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
SACRAMENTO DIVISION

| | |
|---|---|
| **In re:** | Case No.:  2019-27396-B-11 |
| | Chapter:  11 |
| HENDRICKSON TRUCK LINES, INC. | DCN:  GEL-6 |
| FEIN: 47-1616076 | **HENDRICKSON TRUCK LINES, INC.'S CHAPTER 11 PLAN OF REORGANIZATION DATED APRIL 9, 2020** |
| Debtor. | Judge:   Hon. Christopher D. Jaime |

**ARTICLE I**
**SUMMARY**

This Plan of Reorganization (the "Plan") under Chapter 11 of the Bankruptcy Code (the "Code") pays creditors of HENDRICKSON TRUCK LINES, INC. (the "Debtor") from future income received from operating its trucking business.  This Plan provides that general unsecured creditors will receive distributions of 100 cents on the dollar.  This Plan also provides for the payment of administrative, secured and priority claims. Any Claims not provided for in this Plan are unimpaired.

## **DISCLAIMER**

Your rights may be affected.  You should read these papers carefully and discuss them with your attorney, if you have one. If you do not have an attorney, you may wish to consult one.

At any time, a party in interest may request information from Debtors' attorney.  **Debtors' attorney is Gabriel E. Liberman.  In communicating with Mr. Liberman, you mail email him at** [Gabe@4851111.com](mailto:Gabe@4851111.com) **or call him at 916-485-1111.** You may also mail correspondence to Mr. Liberman at 1545 River Park Drive, Suite 530, Sacramento CA 95815, or fax correspondence to him at 916-437-4285.

## **ARTICLE II**

### **TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS,**
### **U.S. TRUSTEES FEES, AND PRIORITY TAX CLAIMS**

<u>Administrative Expense Claims</u>.  Each holder of an administrative expense claim allowed under § 503 of the Code will be paid in full on the Effective Date of this Plan, in cash, or upon such other terms as may be agreed upon by the holder of the claim and the Debtors.

<u>Priority Tax Claims</u>.  Priority Tax Claims are provided for in this Plan and paid consistent with the Bankruptcy Code including interest per 11 USC 511 consistent with 11 U.S.C. 507 Section (a)(8) and 11 U.S.C. 1129 Section (a)(9)(C).

<u>United States Trustees Fees</u>.  All fees required to be paid by 28 U.S.C. §1930(a)(6) (U.S. Trustee Fees) will accrue and be timely paid until the case is closed, dismissed, or converted to another chapter of the Code.  Any U.S. Trustee Fees owed on or before the Effective Date of this Plan will be paid on the Effective Date, unless the U.S. Trustee agrees otherwise.

# ARTICLE III

## TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN

### A. Unclassified Claims

> a. *Administrative Claims are listed above; Professional Fees and United States Trustee Fees.*

| Type of Claim | Estimated Amount | Basis for Claim |
|---|---|---|
| Professional Fees and Expenses (subject to final fee applications and court approval)<br><br>Known fees and expenses in this class:<br><br>Fees and expenses incurred in representing the Debtor in Possession owed to the Law Offices of Gabriel E. Liberman, APC | **$50,000**<br>*(Estimated amt.)* | Balance due to professionals of Debtor. Amount is merely a rough estimate as the amount of fees between now and confirmation is a large variable.<br><br>Debtor's counsel is currently holding $0.00 as a post-petition retainer as of filing of this Disclosure Statement.<br><br>Under this Plan, Administrative Expenses shall be paid in monthly installments of $25,000.00 following effective date of the Plan or upon such other terms as may be agreed upon by the holder of the claim and the Debtor. |
| Other Unpaid Administrative Expenses<br><br>None anticipated | $0 | Any other unpaid administrative priority expenses, other than expenses paid in the ordinary course during the Case. |
| Cure Payments | $0 | There are no projected payments necessary to cure monetary defaults under assumed executor contracts or unexpired leases. |
| Clerk's Office Fees | $0 | There are no projected payments necessary to cure monetary defaults under assumed executor contracts or unexpired leases. |
| U.S. Trustee Fees | $0 | Debtor believes it is current on UST fees and anticipates being current through confirmation. |
| Total | **$50,000** | |

**B. Classes of Claims and Equity Interests**
    *a. Classes of Secured Claims*

| CLASS | IMPAIRMENT | TREATMENT |
|---|---|---|
| Class 1<br><br>Claim holder:<br>**Coleson Investment Companies LLC, SBA Loan**<br>5428 Watt Avenue<br>North Highlands, CA 95660<br><br>First Deed of Trust on commercial property:<br>*7080 Florin Perkins Road*<br>*Sacramento CA 95828*<br>*8.54 acres*<br>*APN: 064-0040-023*<br><br>Claim: $ 73,585.00*<br>Value: $2,640,000.00<br>*(Value based on appraisal)*<br><br>*No proof of claim has been filed. | Unimpaired | Under this plan the Debtor shall continue to make mortgage payments to the Class 1 claimant in accordance with the pre-petition terms of the mortgage agreement.<br><br>Monthly payment: **$5,085.66**<br>Claim is estimated to be paid off in less than 12 months<br><br>As such the Debtor shall make monthly installments payments to the claim holder.<br><br>Payments shall continue as normally scheduled under the Note and Deed of Trust. |
| Class 2<br><br>Claim holder:<br>**Transportation Alliance Bank, Inc.**<br>4185 Harrison Blvd.<br>Suite 200<br>Ogden, UT 84403<br><br>Second Deed of Trust on commercial property:<br>*7080 Florin Perkins Road*<br>*Sacramento CA 95828*<br>*8.54 acres* | Impaired | Under this plan, the Claim in Class 2 is to be treated as Fully Secured. The only impairment to this Claim holder is extending the balloon payment.<br><br>The secured claim shall be paid as follows:<br><br>Monthly payment: **$20,052.92**<br>Interest rate: **6.5%**<br>Balloon payment extended and due on month 36 from the Effective Date of the Plan for **$1,352,796.00** |

| | | |
|---|---|---|
| *APN: 064-0040-023*<br><br>Secured by Cross-collateralized:<br>TAB's claims are cross-collateralized and cross-defaulted such that its claims are fully secured pursuant to the terms of post-petition financing agreement approved by this Court.<br><br>Estimated Claim: $1,353,796.00 *<br>Value: $2,640,000.00<br>*(Value based on appraisal)*<br><br>*Proof of claim No. 6 filed 3-24-2020 | | The foregoing provisions shall be deemed to be modifications to the loan documents related to Business Loan Agreement dated as of July 30, 2008 and modified by Modification Agreement dated March 24, 2017 ("Loan"). Except as expressly modified herein, the prepetition loan documents relating to Loan remain in full force and effect. In the event of a default under such Loan, as modified herein, TAB Bank may exercise all of its remedies available under applicable state law. Likewise, Debtors maintain all rights and protections of California law.<br><br>Payments shall continue as normally scheduled under the Loan agreement.<br><br>In the event of a default, this Claimant may exercise all of its remedies available under applicable state law. Likewise, Debtors maintain all rights and protections of California Real Property and Foreclosure Law. Claimant may not repossess or dispose of their collateral so long as Debtor is not in material default under the Plan. |
| <u>Class 3</u><br><br>Claim holder:<br>**<u>Transportation Alliance Bank, Inc.</u>**<br>4185 Harrison Blvd.<br>Suite 200<br>Ogden, UT 84403<br><br>Secured by 210 Trailers<br><br>Claim: $753,614.40*<br>Balance owed on tractors: $805,030.00<br>Value: $1,264,009.00<br>*(Value based on Debtor's opinion)* | Unimpaired | Under this plan the Debtor shall continue to make the contractual payments to the Class 6 claimant in accordance with the pre-petition terms of the security agreement.<br><br>Monthly payment: **$36,084.00**<br>Estimated payoff of loan in less than 24 months<br><br>Payments shall continue as normally scheduled under the security agreement.<br><br>In the event of a default, this Claimant may exercise all of its remedies available under applicable state law. Likewise, Debtors maintain all rights and protections of California Foreclosure Law. |

| | | |
|---|---|---|
| * Proof of claim No. 6 filed 3-24-2020 | | |
| <u>Class 4</u><br><br>Claim holder:<br>**<u>Transportation Alliance Bank, Inc.</u>**<br>4185 Harrison Blvd.<br>Suite 200<br>Ogden, UT 84403<br><br>Secured by Account Receivables<br><br>Claim: $2,551,612.00<br>Receivables as of Petition Date:<br>Less 90 days: $2,901,979.00<br>Over 90 days: $203,209.00<br>Total: $3,105,188.00<br><br>Proof of claim No. 6 filed 3-24-2020 | Unimpaired | All rights under the loan documents remain intact post confirmation.<br><br>This claim is fully secured by Cross-collateralized and cross-defaulted pursuant to the terms of the post-petition financing, which was granted by order of this Court on January 15, 2020 (Docket No. 75) |
| <u>Class 5</u><br><br>Claim holder:<br>**Ciras, LLC**<br>c/o EBC Asset Investment<br>3000 Smoot Road - Ste A<br>Smoot, WV 24977<br><br>Secured by 50 trailers<br><br>Claim: $142,081.00*<br>Value of collateral:<br>$250,000.00<br>*(Value based on Debtor's opinion)*<br><br>*Proof of Claim no. 4 filed on 3/6/2020 provides claim at $272,139.73. Debtor asserts | Unimpaired | Under this plan the Debtor shall continue to make the contractual payments to the Class 5 claimant in accordance with the pre-petition terms of the security agreement.<br><br>Monthly payment: **$5,048.05**<br>Interest rate per annum: **5.0%**<br>Estimated payoff of loan in less than 24 months |

| | | |
|---|---|---|
| this is inaccurate and will dispute this claim. | | |

### a. Classes of Priority Unsecured Claims

| **TYPE OF CLAIM** | **Date of Assessment** | **TREATMENT** |
|---|---|---|
| <u>Class 6</u><br><br>Claim holder:<br>**Internal Revenue Service (IRS)**<br>P O Box 7346<br>Philadelphia, PA  19101<br><br>Claim: $240,219.66*<br>Priority amount: $240,219.66<br><br>Secured by:<br>Unsecured<br><br>*No Proof of claim has been filed. | 2010 – 2014<br>(WT-FICA; FUTA) | This Priority Claim shall be paid in full within 60 months of the effective date of the confirmed plan.<br><br>Claim Amount: $240,219.66<br>Months 1-12: $ 0.00<br>Months 13-24: $2,056.46<br>Months 25-36: $3,701.63<br>Months 37-48: $4,441.95<br>Months 49-60: $10,364.56<br><br>Interest Rate: 5.00%<br><br>Interest shall accrue at the normal rate of interest charged by the Claimant under non-bankruptcy law; however, no penalties shall accrue in addition to the interest for taxes paid within this Plan.<br><br>See **Exhibit A** for additional calculation and breakdown of payment |
| <u>Class 7</u><br><br>Claim holder:<br>**California Department of Tax and Fee Administration**<br>Po Box 942879<br>Sacramento, Ca 94279-0055<br><br>Claim: $84,723.24*<br>Priority unsecured amount: $84,723.24 | 2007-2009<br>(Int'l. Fuel Tax) | This Priority Claim shall be paid in full within 60 months of the effective date of the confirmed plan.<br><br>Claim Amount: $84,723.24<br>Months 1-12: $ 0.00<br>Months 13-24: $736.99<br>Months 25-36: $1326.59<br>Months 37-48: $1,591.91<br>Months 49-60: $3714.45<br><br>Interest Rate: 8.00% |

| | | |
|---|---|---|
| *Proof of claim No. 2 filed on 2/21/2020 | | Interest shall accrue at the normal rate of interest charged by the Claimant under non-bankruptcy law; however, no penalties shall accrue in addition to the interest for taxes paid within this Plan.<br><br>See **Exhibit A** for additional calculation and breakdown of payment |
| Class 8<br><br>Claim holder:<br>**Employment Development Department (EDD)**<br>Bankruptcy Group MIC 92E,<br>PO BOX 826880<br>Sacramento, CA 95814<br><br>Claim: $506,612.84*<br>Priority unsecured: $415,881.43<br>Unsecured: $90,731.41<br><br>*Proof of claim No. 5 filed 3/6/2020 | 2008-2015 (Unemployment Insurance and/or Employment Training Tax (ETT)) | This Priority Claim shall be paid in full within 60 months of the effective date of the confirmed plan.<br><br>Claim Amount: $415,881.43<br>Months 1-12: $ 0.00<br>Months 13-24: $3,541.23<br>Months 25-36: $6,374.21<br>Months 37-48: $7,649.05<br>Months 49-60: $17,847.78<br><br>Interest Rate: 4.00%<br><br>Interest shall accrue at the normal rate of interest charged by the Claimant under non-bankruptcy law; however, no penalties shall accrue in addition to the interest for taxes paid within this Plan.<br><br>See **Exhibit A** for additional calculation and breakdown of payment |
| Class 9<br><br>Claim holder:<br>**Oregon Department of Transportation**<br>Financial Services Collections<br>355 Capital St. NE MS#21<br>Salem, OR 97301<br><br>Total Claim: $438,167.87<br>Priority: $438,167.87<br><br>Secured by:<br>$70,249.76 Cash deposit in lieu of bond | 2012-2015 (Hwy Use Tax) | This Priority Claim shall be paid in full within 60 months of the effective date of the confirmed plan.<br><br>Claim Amount: $438,167.87<br>Months 1-12: $ 0.00<br>Months 13-24: $3,928.56<br>Months 25-36: $7,007.52<br>Months 37-48: $8,409.03<br>Months 49-60: $19,621.07<br><br>Interest Rate: 12.00%<br><br>Interest shall accrue at the normal rate of interest charged by the Claimant under non-bankruptcy law; however, no penalties shall |

| | | accrue in addition to the interest for taxes paid within this Plan.<br><br>See **Exhibit A** for additional calculation and breakdown of payment |
| --- | --- | --- |

b.  *Classes of General Unsecured Claims*

| CLASS | IMPAIRMENT | TREATMENT |
| --- | --- | --- |
| Class 10<br><br>**General unsecured claims**<br>Estimated Total: $457,004.79<br><br>Daimler Chrysler Financial Services: $200,533.38 – Assumed Lease deficiency claim<br><br>Kaiser Foundational Health Plan, Inc.: $132,890.00 – Employee healthcare benefits<br><br>Phoenix Settlement Administration re; Sylvio ST. Amand: $32,850.00 – Class action settlement on misclassification of employees.<br><br>Pitney Bowes: $3,344.24 Disputed deficiency lease claim. Debtor intends on objecting to proof of claim, No. 1.<br><br>Class 8<br>Unsecured non-priority portion of EDD claim: $90,731.41 | Impaired | Debtor shall pay **100%** to this class to be distributed to claim holders in this class on a pro rata basis **over 16 months** or sooner as follows:<br><br>Monthly Payment: **$28,562.80**<br>Interest Rate per Annum: **0%**<br><br>1st payment will commence after all administrative claims have been paid in full. Debtor estimates payments will begin 120 days after the Effective Date. Payments will be made in equal monthly payments by the 15th of each month. A distribution schedule is attached hereto as **Exhibit B**<br><br>In the event of a default, this Claimant may exercise all of its remedies available under applicable state law. Likewise, Debtors maintain all rights and protections of California Real Property and Foreclosure Law. Claimant may not repossess or dispose of their collateral so long as Debtor is not in material default under the Plan. |

c.  *Classes of Equity Interests*

| Class 11<br><br>**Equity Interest Holders of the Debtor in the Property of the Estate.**<br><br>Current holders of equity are as follows:<br>William Hendrickson – 1,000 shares | Unimpaired | Current Equity Interest Holders of the Debtor, William Hendrickson, shall retain his full interest in the equity that he holds. |
|---|---|---|

**ARTICLE IV**

**ALLOWANCE AND DISALLOWANCE OF CLAIMS**

Disputed Claim. A disputed claim is a claim that has not been allowed or disallowed, and as to which either: (i) a proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or (ii) no proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated.  There are two disputed claims known as of filing of this Disclosure Statement:

| Creditor | Claim No. and Amount | Basis for Dispute |
|---|---|---|
| Pitney Bowes | Claim No. 1: $3,344.24 | Disputed deficiency lease claim for stamp/mailing equipment. |
| Ciras, LLC | Claim No. 4: $272,139.73 | Debtor asserts this is inaccurate accounting of secured claim and amount should be $142,081.00. |

Delay of Distribution on a Disputed Claim. No distribution will be made on account of a Disputed Claim unless such claim is allowed by a final order.

Settlement of Disputed Claims. Debtors will have the power and authority to settle and compromise a Disputed Claim with court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure.

**Administrative Claim.  The deadline to file an application to approve an Administrative Claim** is **45 days** from the Effective Date.

If a motion for an Administrative Claim is filed within the deadline but the motion is denied then the deadline of that Administrative Claim shall be extended 14 days after the Order denying the Application.

**The Deadline to file an objection to a claim is 45 days** from the Effective Date.  If the Effective Date of the Plan lands before the deadline to file a claim, then the deadline to file an objection to the claim shall be the later of 30 days after the deadline to file claims or 45 days after the Effective Date.

## ARTICLE V

## PROVISIONS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES

| Creditor | Date Entered Lease | Asset Description | Treatment |
|---|---|---|---|
| 19th Capital Group, LLC | ELE-FL-03100 | 89 Semi-trucks | Debtor shall pay the claim of 19th Capital Group, LLC regarding 89 tractors. 19th Capital Group, LLC filed Proof of Claim No 7.  Debtor will assume the lease at the modified terms, described in Stipulation attached hereto as **Exhibit C** and summarized below:<br><br>Payment due date: 15th of the month<br>March 2020: $198,525.00<br>April 2020: $198,525.00<br>Payment covers February post-petition delinquency.<br><br>Repayment plan starts May 1, 2020: $157,132.49<br><br>19th Capital Group agrees to write off $18k+ in total loss billing and $41k+ in 2019 mileage billing<br><br>Except as expressly modified by this Plan and Stipulation, the agreement between the parties shall otherwise remain in full force and effect. |

| | | Copy machine and maintenance support | |
|---|---|---|---|
| Xerox Financial Services | 02/2019 | | Assume 36-month lease for office copier. Monthly payment: $2,530.00. |

Other Leases and Executory Contracts. Debtor is not aware of any other unexpired leases or executory contracts. If any should be found to exist, it is rejected. A Proof of Claim for damages resulting from a rejection shall be filed within thirty (30) days after the entry or an order of the Court approving the rejection. Such claim shall be deemed allowed unless, thirty (30) days of service a copy of the Proof of Claim upon HTL and its Counsel, an objection is filed. Each objection shall be determined by the Court as a contested matter under ("FRBP"), 9014. Any such Claim shall be added to the general unsecured class in the Plan.

**ARTICLE VI**

**MEANS FOR IMPLEMENTATION OF THE PLAN**

Pursuant to §1123(a)(5) of the Code. The Debtors will, upon the confirmation of this Plan, complete the following steps:

1. On the Effective Date of the Plan, Debtor will make the following

    distributions to claim holders under this Plan. These classes include:

    a. Continue monthly payments to secured claims of Transportation Alliance Bank;

    b. Continue monthly payment to secured claim of Coleson Investment Companies LLC;

    c. Continue monthly payment to secured claim of Ciras, LLC;

    d. Continue monthly payments to leaseholders: 19th Capital Group, LLC and Xerox Financial Services;

_____12_____

    e.   Monthly payments to priority general unsecured claims; and

    f.   Monthly payments to the general unsecured class

2.  Administrative claims, including attorney fees, and United States trustee fees, shall be paid upon confirmation of Debtors' plan.

3.  Under this Plan, Debtor's equity holders will retain all property of the estate.

## ARTICLE VII
## EFFECT OF CONFIRMATION AND GENERAL PROVISIONS

<u>Definitions and Rules of Construction.</u> The definitions and rules of construction set forth in §§ 101 and 102 of the Code shall apply when terms defined or construed in the Code are used in this Plan.

<u>Effective Date of Plan</u>. The Effective Date of this Plan is the fifteenth day following the date of the entry of the final order of confirmation. But if a stay of the confirmation order is in effect on that date, the Effective Date will be the first business day after that date on which no stay of the confirmation order is in effect, provided that the confirmation order has not been vacated.

<u>Severability.</u> If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

<u>Binding Effect</u>. The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity.

<u>Vesting of Property</u>.  On the Effective Date, all property of the estate will vest in Debtors.

<u>Plan Creates New Obligations</u>.  Except as otherwise stated in the Plan, the payments promised in the Plan constitute new contractual obligations that replace those obligations to creditors that existed prior to the Effective Date.

Creditor Action Restrained.  Creditors may not take any action to enforce either preconfirmation obligations or obligations due under the Plan, so long as the Debtors are not in material default under the Plan.  If the Debtors are in material default under the Plan, affected creditors may: (i) take any action permitted under nonbankruptcy law to enforce the terms of the Plan; or (ii) move to dismiss this case or to convert this case to a chapter 7 bankruptcy case.

Material Default Defined.  If Debtors fail to make any payment, or to perform any other obligation required under the Plan, for more than 15 days after the time specified in the Plan for such payment or other performance, any member of a class affected by the default may serve upon Debtors and Debtors' attorney a written notice of Debtors' default. If Debtors fail within 30 days after the date of service of the notice of default either: (i) to cure the default; (ii) to obtain from the court an extension of time to cure the default; or (iii) to obtain from the court a determination that no default occurred, then Debtors are in Material Default under the Plan to all the members of the affected class.

Remedies Upon Material Default.  Upon Material Default, any member of a class affected by the default: (i) may file and serve a motion to dismiss the case or to convert the case to Chapter 7; or (ii) without further order of the court has relief from stay to the extent necessary, and may pursue its lawful remedies to enforce and collect Debtors' pre-confirmation obligations.

Post-confirmation United States Trustee Quarterly Fees.  A quarterly fee shall be paid by Debtors to the United States Trustee, for deposit into the Treasury, for each quarter (including any fraction thereof) until the case is converted, dismissed, or closed by the entry of a final decree pursuant to 28 U.S.C. § 1930(a)(6).

Chapter 11 Post-confirmation Reports and Final Decree.  At the end of each calendar quarter, Debtors shall file with the Court a post-confirmation status report, the purpose of which is to explain the progress made toward full administration of the confirmed plan of reorganization. The first Report shall be filed for the portion of the calendar quarter from the date of confirmation to the end of the quarter. Subsequent

reports shall be filed at the expiration of each calendar quarter thereafter until dismissal, conversion, or entry of a final decree closing the case. Reports shall be filed with the Court and served upon the United States Trustee not later than twenty (20) days after the expiration of the reported quarter.

The Report shall include a statement of receipts and disbursements, with the ending cash balance, for the entire 90-day period. The report shall also include information sufficiently comprehensive to enable the court to determine:

(a) whether the order confirming the plan has become final; (2) whether deposits, if any, required by the plan have been distributed; (3) whether any property proposed by the plan to be transferred has been transferred; (4) whether Debtor under the plan has assumed the business or the management of the property dealt with by the plan; (5) whether payments under the plan have commenced; (6) whether accrued fees due to the United States Trustee under 28 U.S.C. §1930(a)(6) have been paid; and (7) whether all motions, contested matters and adversary proceedings have been finally resolved.

(b) Service of Reports: A copy of each report shall be served upon the United States Trustee and other persons or entities as have requested service of such reports in writing with the Court, no later than the day upon which it is filed with the Court.

(c) Final Decree: After the estate is fully administered, Debtors shall file an application for final decree, and shall serve the application on the United States Trustee, together with a proposed final decree. The United States Trustee shall have twenty (20) days within which to object or otherwise comment upon the Court's entry of the final decree.

Discharge. Except as specifically provided in the Plan and/or the Confirmation Order, as of the Effective Date, Confirmation shall discharge the Debtor pursuant to section 1141(d)(1)(A) of the Bankruptcy Code from any and all Claims of any nature whatsoever, including any Claims and liabilities that arose prior to Confirmation, and all debts of the kind specified in sections 502(g), 502(h) or 502(i) of the Bankruptcy Code, whether or not (a) a Proof of Claim based on such Claim was filed or deemed filed under section 501 of the Bankruptcy Code, or such Claim was listed on the Schedules of the Debtors, (b) such Claim is

or was Allowed under section 502 of the Bankruptcy Code, or (c) the holder of such Claim has voted on or accepted the Plan. Except as provided for in the Plan and/or the Confirmation Order, the rights that are provided in the Plan as of the Effective Date shall be in exchange for and in complete satisfaction, settlement and discharge of all Claims against, liens on, and interests in the Debtor or any Estate Property.

Respectfully submitted,

LAW OFFICES OF GABRIEL LIBERMAN, APC

Dated: April 9, 2020

By:     /s/     Gabriel E. Liberman
           Gabriel E. Liberman
           Attorney for Debtor
           1545 River Park Drive, Suite 530
           Sacramento, CA  95815
           Gabe@4851111.com

# EXHIBIT A

Priority Unsecured Creditors Distribution Schedule

**HENDRICKSON TRUCK LINES, INC.**
Priority unsecured claim monthly payments
*Based on Effective Date of Plan*

| | Starting Balance | POC NO. | Months 1-12 | | Balance after 12 months | Months 13-24 10% | Months 13-24 10% plus interest | Monthly | Balance after 24 months | Months 25-35 20% interest | Months 25-36 20% plus interest | Monthly Payment | Balance after 36 months | Months 37-48 30% | Months 37-48 30% plus interest | Monthly Payment | Balance after 48 months | Months 49-60 Balance or 40% & interest | Monthly Payment |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Oregon Dept of Transportation | $ 438,167.87 | | 12% | 0.00 | $ 438,167.87 | $ 43,816.79 | $ 46,716.82 | $ 3,893.07 | $ 394,351.08 | 78,870.22 | $ 84,090.28 | $ 7,007.52 | $ 315,480.87 | $ 94,644.26 | 100,908.33 | $ 8,409.03 | $ 220,836.61 | $ 235,452.78 | $ 19,621.07 |
| CA Dept of Tax and Fee Admin. | $ 84,723.24 | 2 | 8% | 0.00 | $ 84,723.24 | $ 8,472.32 | $ 736.99 | | 76,250.92 | 15,250.18 | 15,919.07 | 1,326.59 | $ 61,000.73 | $ 18,300.22 | 19,102.89 | 1,591.91 | $ 42,700.51 | 44,573.40 | $ 3,714.45 |
| Employment Development (EDD) | $ 415,881.43 | 5 | 4% | 0.00 | $ 415,881.43 | $ 41,588.14 | $ 42,494.71 | $ 3,541.23 | 374,293.29 | 74,858.66 | 76,090.49 | 6,374.21 | $ 299,434.63 | $ 89,830.39 | 91,788.59 | 7,649.05 | $ 209,604.24 | 214,173.37 | $ 17,847.78 |
| Internal Revenue Service | $ 240,219.66 | | 5% | 0.00 | $ 240,219.66 | $ 24,021.97 | $ 24,677.52 | $ 2,056.46 | 216,197.69 | 43,239.54 | 44,419.54 | 3,701.63 | $ 172,958.16 | $ 51,887.45 | 53,303.45 | 4,441.95 | $ 121,070.71 | 124,374.70 | $ 10,364.56 |
| Total Cash Disbursements | $ 1,178,992.20 | | | | | | | $ 10,227.75 | | | | $ 18,409.95 | | | | $ 22,091.94 | | | $ 51,547.85 |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT B

General Unsecured Creditors Distribution Schedule

| Claim | POC NO. | Claim Amount | 100% Pro-rata | Monthly payment (Months 1-2) | Monthly payment (Months 2-18) |
|---|---|---|---|---|---|
| Administrative Claims - Estimated Professional Fees for Debtor's counsel | N/A | $50,000.00 | | $  25,000.00 | |
| **Class 4 Unsecured Claims** | | | | | |
| Daimler Chrysler Financial Services | | $  200,533.38 | $  200,533.38 | $          - | $  12,533.34 |
| Kaiser Foundational Health Plan, Inc | | $  132,890.00 | $  132,890.00 | $          - | $  8,305.63 |
| Phoenix Settlement Administration: Re: Sylvio ST. Amand | 8,9, 10 | $  32,850.00 | $  32,850.00 | $          - | $  2,053.13 |
| EDD - Class 8 - unsecured non-priority portion | 5 | $  90,731.41 | $  90,731.41 | $          - | $  5,670.71 |
| Pitney Bowes (disputed) | 1 | $  7,500.00 | $          - | $          - | $          - |
| | | $  **464,504.79** | $  **457,004.79** | $  25,000.00 | $  28,562.80 |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT C

Stipulation resolving lease between Debtor and 19th Capital Group, LLC

Vincent A. Gorski (CSB #263487)
**THE GORSKI FIRM, A.P.C.**
309 Truxtun Avenue
Bakersfield, CA 93301
Telephone: (661) 952-9740
E-mail: vgorski@thegorskifirm.com
Counsel for 19th Capital Group, LLC

**UNITED STATES BANKRUPTCY COURT**

**EASTERN DISTRICT OF CALIFORNIA, SACRAMENTO DIVISION**

| | |
|---|---|
| In Re:<br><br>HENDRICKSON TRUCK LINES, INC.<br><br>      Debtor.<br>_____<br><br>19th CAPITAL GROUP, LLC<br><br>      19th Capital,<br><br>vs.<br><br>HENDRICKSON TRUCK LINES, INC.<br><br>      Respondent. | Case Number: 2019-27396-B-11<br><br>DCN: TGF-001<br><br>Chapter 11<br><br>**STIPULATION RESOLVING 19th CAPITAL GROUP, LLC'S AMENDED MOTION FOR RELIEF FROM THE AUTOMATIC STAY**<br><br>Continued Hearing:<br>**Date:** March 31, 2020<br>**Time:** 9:30 a.m.<br>**Location:** 501 I Street, 6th Floor<br>Courtroom 32;<br>Sacramento, CA 95814<br><br>**Honorable:** Christopher D. Jaime |

**RECITALS**

A.    On August 16, 2018, Hendrickson Truck Lines, Inc. (the "Debtor") entered into a Master Lease Agreement (the "Lease") with 19th Capital Group, LLC (19th Capital) to lease from 19th Capital equipment and other property described in equipment schedules executed contemporaneously with the Lease and thereafter.

B.    On August 17, 2018, the Debtor executed an Equipment Schedule described as *Equipment Schedule Series INV-0019672-2* which incorporated the Lease by reference (the "August 17, 2018 Schedule"). A total of nineteen semi-trucks are set forth in the August 17, 2018 Schedule and subject to the Lease.

THE GORSKI FIRM, APC
www.TheGorskiFirm.com

THE GORSKI FIRM, APC
www.TheGorskiFirm.com

C.     On November 30, 2018, the Debtor executed an Equipment Schedule described as *Equipment Schedule Series INV-0021373-4* which incorporated the Lease by reference (the "November 30, 2018 Schedule"). A total of twenty-five semi-trucks are set forth in the November 30, 2018 Schedule and subject to the Lease.

D.     On June 18, 2019, the Debtor executed an Equipment Schedule described as *Equipment Schedule Series INV-0024418-2* which incorporated the Lease by reference (the "First June 18, 2019 Schedule"). A total of twenty-eight semi-trucks are set forth in the June 18, 2019 Schedule and subject to the Lease.

E.     On June 18, 2019, the Debtor executed an Equipment Schedule described as *Equipment Schedule Series INV-0024249-2* which incorporated the Lease by reference (the "Second June 18, 2019 Schedule"). A total of four semi-trucks are set forth in the Second June 18, 2019 Schedule and subject to the Lease.

F.     On May 10, 2019, the Debtor executed an Equipment Schedule described as *Equipment Schedule Series INV-0023956-2* which incorporated the Lease by reference (the "May 10, 2019 Schedule"). A total of thirty-five semi-trucks are set forth in the May 10, 2019 Schedule and subject to the Lease.

G.     At all times relevant hereto, 19th Capital was, and remains the leasor of the eighty-nine semi-trucks set forth in Exhibit "A" all of which are subject to the terms of the Lease.

H.     The Lease is a true lease. Accordingly, the Debtor does not have any equity in the semi-trucks or personal property subject to the Lease.

I.     On November 27, 2019 (the "Petition Date"), the Debtor filed for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code").

J.     Pursuant to Bankruptcy Code Section 365(d)(5), a debtor in possession in a Chapter 11 case is required to make all payments first arising from or after 60 days after the filing of a bankruptcy petition. In this case, the Debtor has not made any payments arising from or after the 60th day after the Petition Date.

THE GORSKI FIRM, APC
www.TheGorskiFirm.com

K.     On February 6, 2020, 19th Capital filed a motion for relief from the automatic stay (the "Motion for Relief from Stay") to exercise its rights and remedies under applicable state law for lack of adequate protection and Debtor's failure to comply with the terms of the Lease and Bankruptcy Code Section 365(d)(5).

L.     The eighty-nine semi-trucks set forth in Exhibit "A" are the vehicles subject to 19th Capital's Motion for Relief from Stay.

M.     The lease related to one of the semi-trucks, a 2015 International ProStar assigned VIN 3HSDJAPR1FN725008, expired after the Petition Date.

N.     The total past due amount due under the Lease on the Petition Date was $154,385.00.

O.     Pursuant to Bankruptcy Code Section 365(d)(5), the Debtor is obligated to make the Lease payments for February 2020 and March 2020.  The Debtor has not made the February 2020 or March 2020 payment.  The February 2020 and March 2020 lease payments are $132,950.00 for each month.

P.     19th Capital asserts that Debtor owes 19th Capital in excess of $70,000.00 pursuant to the Lease for NSF, late fees, interest, total loss billing and mileage billing.

Q.     Debtor asserts that 19th Capital is financially responsible for certain claims for maintenance and services related to some of the trucks subject to the Lease.  In its opposition to the Motion for Relief from Stay, Debtor asserts that 19th Capital is responsible for an aggregate of $606,250.00 related to alleged costs for repair of the trucks, towing fees, and lost revenue.  19th Capital vehemently denies any responsibility for these alleged fees and costs related to vehicle maintenance, service, repair, towing fees, and lost revenue.

R.     The Debtor and 19th Capital reached an agreement fully resolving the Motion for Relief from Stay.

**THEREFORE, THE PARTIES STIPULATE AND AGREE AS FOLLOWS:**

1.     Contemporaneous with executing this stipulation, the Debtor shall execute and return to 19th Capital the lease renewal attached hereto and incorporated herewith as

1   Exhibit "B" related to the 2015 International ProStar (VIN 3HSDJAPR1FN725008).

2          2.      Effective February 1, 2020, the monthly rent under the Lease shall be

3   $132,950.00.  Effective March 1, 2020, the monthly rent under the Lease shall be

4   $132,050.00

5          3.      The lease payments for February 2020 shall be paid in two equal installments

6   of $66,475.00.  The first installment is due on March 15, 2020.  The second installment is

7   due on April 15, 2020.  The total amount due on March 15, 2020 and April 15, 2020,

8   including the installment payments for the February 2020 rent, shall be $198,525.00.

9          4.      Effective May 1, 2020, the Debtor shall commence repayment on the pre-

10  petition past due lease payments.  The pre-petition past due lease payments shall be made

11  in equal installments based on the remaining number of payments due for each lease.

12  Attached hereto and incorporated herewith as Exhibit "C" is a spreadsheet setting forth

13  each lease term, start date, end date, months for the respective repayment, and additional

14  monthly payment.

15         5.      Effective May 15, 2020, the total monthly payment, including the normal

16  monthly rent plus the repayment on pre-petition past due lease payments shall be

17  $157,132.49.  This total payment will be reduced by the respective "Additional Monthly

18  Payment" set forth in Exhibit "C" as each lease matures.

19         6.      Effective upon the execution of this stipulation by the parties, all payments

20  due pursuant to this stipulation and the Lease shall be due on the 15th day of each month

21  (the "Due Date").

22         7.      Unless otherwise direct in writing by 19th Capital, payments due pursuant to

23  this stipulation and the Lease shall be wired to 19th Capital pursuant to the following wire

24  instructions:

25  Name of Bank:        BMO Harris Bank
    Bank ABA Number:  071000288
26  SWIFT Code:          HATRUS44
    Account Number:    354-301-4
27  Account Name:        19th Capital Group, LLC., Lease Payments Account
    Account Type:        Corporate Checking
28  Bank City and State:  Chicago, IL

THE GORSKI FIRM, APC
www.TheGorskiFirm.com

8.  Upon the execution of this stipulation by all parties, the Debtor waives any claims it asserts through the date this stipulation is executed for fees and costs related to vehicle maintenance, service and repair, towing fees, and lost revenue.

9.  Upon the execution of this stipulation by all parties, 19th Capital waives all claims through the date this stipulation is executed by the parties to NSF, late fees, interest, total loss billing and mileage billing it is entitled to pursuant to the Lease.

10.  The Debtor's treatment of 19th Capital's claims in the Chapter 11 plan filed in this case shall be consistent with this stipulation.

11.  In the event the Debtor fails to cure any default under the stipulation or Lease within five days after written notice thereof directed to the Debtor (at the address indicated in its bankruptcy petition) and the Debtor's counsel of record, 19th Capital may submit to the Court, ex parte, a proposed order granting relief from the automatic stay (the "Proposed Order"), along with an affidavit or declaration attesting to the Debtor's failure to cure timely its default, in which case the Court shall enter the proposed order granting 19th Capital relief from the automatic stay to enforce all of its rights and remedies under the Lease and applicable bankruptcy and non-bankruptcy law.

12.  Notwithstanding anything contained in this stipulation to the contrary, the Debtor shall be entitled to a maximum of 3 notices of default and opportunities to cure pursuant to the preceding paragraphs. Once the Debtor has defaulted this number of times on the obligations imposed by this stipulation and has been served with this number of notices of default, 19th Capital is relieved of any obligation to serve additional notices of default or to provide additional opportunities to cure.  If an event of default occurs thereafter, 19th Capital will be entitled, without first serving a notice of default or providing the Debtor with an opportunity to cure, to file and serve a declaration under penalty of perjury setting forth in detail the Debtor's failures to perform under this stipulation or Lease, together with a Proposed Order, which the court may enter without further notice or hearing.

THE GORSKI FIRM, APC
www.TheGorskiFirm.com

13. The Proposed Order described in paragraphs 11 and 12 will terminate the automatic stay imposed by Bankruptcy Code Section 362 as to all vehicles and personal property subject to the Lease and this stipulation. The Proposed Order shall waive the 14-day stay pursuant to Rule 4001(a)(3) of the Federal Rules of Bankruptcy Procedure. Upon the clerk's entry of the Proposed Order on the docket in this case, 19th Capital shall be immediately entitled to exercise all rights pursuant to state law to repossess and sell the property subject to the Lease.

**IT IS SO STIPULATED:**

Date: _____          THE GORSKI FIRM, APC


_____
Vincent A. Gorski, Esq.
Counsel for 19th Capital Group, LLC


Date: _____          LAW OFFICES OF GABRIEL LIBERMAN, APC


_____
Gabriel E. Liberman
Counsel for Hendrickson Truck Lines, Inc


Date: _____          19th Capital Group, LLC


_____
James Zender,
Vice President & General Counsel


Date: _____          Hendrickson Truck Lines, Inc.


_____
By: _____
Title: _____

| VIN | Fleet Truck Name | Account: Account Name |
| --- | --- | --- |
| 3HSDJAPR9GN284200 | FTRUCK-09373 | Hendrickson Truck Lines, Inc. |
| 3HSDJAPR3GN285794 | FTRUCK-10084 | Hendrickson Truck Lines, Inc. |
| 3HSDJAPR2GN285527 | FTRUCK-09365 | Hendrickson Truck Lines, Inc. |
| 3HSDJAPR7GN285443 | FTRUCK-10088 | Hendrickson Truck Lines, Inc. |
| 3HSDJAPR8GN287511 | FTRUCK-10083 | Hendrickson Truck Lines, Inc. |
| 3HSDJAPR5GN287983 | FTRUCK-10086 | Hendrickson Truck Lines, Inc. |
| 3HSDJAPR1GN287494 | FTRUCK-09784 | Hendrickson Truck Lines, Inc. |
| 3HSDJAPR7GN287497 | FTRUCK-10089 | Hendrickson Truck Lines, Inc. |
| 3HSDJAPR5GN285828 | FTRUCK-09357 | Hendrickson Truck Lines, Inc. |
| 3HSDJAPR0GN284215 | FTRUCK-09360 | Hendrickson Truck Lines, Inc. |
| 3HSDJAPR8GN111204 | FTRUCK-09353 | Hendrickson Truck Lines, Inc. |
| 3HSDJAPR2GN030473 | FTRUCK-09355 | Hendrickson Truck Lines, Inc. |
| 3HSDJAPR3GN287495 | FTRUCK-10085 | Hendrickson Truck Lines, Inc. |
| 3HSDJAPR1GN284191 | FTRUCK-09363 | Hendrickson Truck Lines, Inc. |
| 3HSDJAPR4GN284203 | FTRUCK-09368 | Hendrickson Truck Lines, Inc. |
| 3HSDJAPR7GN285863 | FTRUCK-10271 | Hendrickson Truck Lines, Inc. |
| 3HSDJAPR0GN284182 | FTRUCK-10268 | Hendrickson Truck Lines, Inc. |
| 3HSDJAPR6GN284199 | FTRUCK-10087 | Hendrickson Truck Lines, Inc. |
| 3HSDJAPR9GN285086 | FTRUCK-10269 | Hendrickson Truck Lines, Inc. |
| 3HSDJAPR2GN111392 | FTRUCK-09782 | Hendrickson Truck Lines, Inc. |
| 3HSDJAPR8GN287489 | FTRUCK-10270 | Hendrickson Truck Lines, Inc. |
| 3HSDJAPR5GN750611 | FTRUCK-09781 | Hendrickson Truck Lines, Inc. |
| 3HSDJAPR0GN111374 | FTRUCK-09354 | Hendrickson Truck Lines, Inc. |
| 3HSDJAPR4GN030717 | FTRUCK-10136 | Hendrickson Truck Lines, Inc. |
| 3HSDJAPR8GN285046 | FTRUCK-10289 | Hendrickson Truck Lines, Inc. |
| 3HSDJAPR9GN030714 | FTRUCK-10139 | Hendrickson Truck Lines, Inc. |
| 3HSDJAPR0GN030438 | FTRUCK-10149 | Hendrickson Truck Lines, Inc. |
| 3HSDJAPR1GN030481 | FTRUCK-10147 | Hendrickson Truck Lines, Inc. |
| 3HSDJAPR6GN030430 | FTRUCK-10134 | Hendrickson Truck Lines, Inc. |
| 3HSDJAPR5GN284887 | FTRUCK-10299 | Hendrickson Truck Lines, Inc. |
| 3HSDJAPR9GN750529 | FTRUCK-10130 | Hendrickson Truck Lines, Inc. |
| 3HSDJAPR3GN750526 | FTRUCK-10127 | Hendrickson Truck Lines, Inc. |
| 3HSDJAPR3GN111448 | FTRUCK-10272 | Hendrickson Truck Lines, Inc. |
| 3HSDJAPR5GN287515 | FTRUCK-10123 | Hendrickson Truck Lines, Inc. |
| 3HSDJAPRXGN285520 | FTRUCK-10291 | Hendrickson Truck Lines, Inc. |
| 3HSDJAPR1GN284210 | FTRUCK-10122 | Hendrickson Truck Lines, Inc. |
| 3HSDJAPR6GN030704 | FTRUCK-10143 | Hendrickson Truck Lines, Inc. |
| 3HSDJAPR3GN030708 | FTRUCK-10141 | Hendrickson Truck Lines, Inc. |
| 3HSDJAPRXGN111432 | FTRUCK-10297 | Hendrickson Truck Lines, Inc. |
| 3HSDJAPRXGN285792 | FTRUCK-10279 | Hendrickson Truck Lines, Inc. |
| 3HSDJAPR9GN285847 | FTRUCK-10275 | Hendrickson Truck Lines, Inc. |
| 3HSDJAPRXGN285436 | FTRUCK-10120 | Hendrickson Truck Lines, Inc. |
| 3HSDJAPR8GN030753 | FTRUCK-10295 | Hendrickson Truck Lines, Inc. |

# EXHIBIT "A"

| | | |
|---|---|---|
| 3HSDJAPR5GN030483 | FTRUCK-10145 | Hendrickson Truck Lines, Inc. |
| 3HSDJAPR8GN285452 | FTRUCK-10277 | Hendrickson Truck Lines, Inc. |
| 3HSDJAPR9GN030812 | FTRUCK-10121 | Hendrickson Truck Lines, Inc. |
| 3HSDJAPR6GN111394 | FTRUCK-10285 | Hendrickson Truck Lines, Inc. |
| 3HSDJAPR6GN288110 | FTRUCK-10119 | Hendrickson Truck Lines, Inc. |
| 3HSDJAPR2GN284894 | FTRUCK-10282 | Hendrickson Truck Lines, Inc. |
| 3HSDJAPR2GN284216 | FTRUCK-10283 | Hendrickson Truck Lines, Inc. |
| 3HSDJAPR9GN285802 | FTRUCK-10292 | Hendrickson Truck Lines, Inc. |
| 3HSDJAPR3GN285486 | FTRUCK-10281 | Hendrickson Truck Lines, Inc. |
| 3HSDJAPR2GN030442 | FTRUCK-10148 | Hendrickson Truck Lines, Inc. |
| 3HSDJAPR1GN285504 | FTRUCK-10288 | Hendrickson Truck Lines, Inc. |
| 3HSDJAPRXGN284903 | FTRUCK-09361 | Hendrickson Truck Lines, Inc. |
| 3HSDJAPR1GN030450 | FTRUCK-10132 | Hendrickson Truck Lines, Inc. |
| 3HSDJAPR6GN285840 | FTRUCK-10276 | Hendrickson Truck Lines, Inc. |
| 3HSDJAPR8GN030476 | FTRUCK-10129 | Hendrickson Truck Lines, Inc. |
| 3HSDJAPRXGN030480 | FTRUCK-10150 | Hendrickson Truck Lines, Inc. |
| 3HSDJAPR3GN111451 | FTRUCK-10273 | Hendrickson Truck Lines, Inc. |
| 3HSDJAPR3GN030482 | FTRUCK-10146 | Hendrickson Truck Lines, Inc. |
| 3HSDJAPR2GN030702 | FTRUCK-10144 | Hendrickson Truck Lines, Inc. |
| 3HSDJAPR0GN030939 | FTRUCK-10125 | Hendrickson Truck Lines, Inc. |
| 3HSDJAPR4GN288087 | FTRUCK-10124 | Hendrickson Truck Lines, Inc. |
| 3HSDJAPRXGN287963 | FTRUCK-10116 | Hendrickson Truck Lines, Inc. |
| 3HSDJAPR2GN285866 | FTRUCK-10298 | Hendrickson Truck Lines, Inc. |
| 3HSDJAPR8GN030459 | FTRUCK-10126 | Hendrickson Truck Lines, Inc. |
| 3HSDJAPR0GN750452 | FTRUCK-10133 | Hendrickson Truck Lines, Inc. |
| 3HSDJAPR5GN030709 | FTRUCK-10140 | Hendrickson Truck Lines, Inc. |
| 3HSDJAPR7GN285412 | FTRUCK-10286 | Hendrickson Truck Lines, Inc. |
| 3HSDJAPR4GN030474 | FTRUCK-10128 | Hendrickson Truck Lines, Inc. |
| 3HSDJAPR5GN750298 | FTRUCK-10296 | Hendrickson Truck Lines, Inc. |
| 3HSDJAPR7GN285474 | FTRUCK-10278 | Hendrickson Truck Lines, Inc. |
| 3HSDJAPR0GN285865 | FTRUCK-09783 | Hendrickson Truck Lines, Inc. |
| 3HSDJAPR5GN285800 | FTRUCK-10280 | Hendrickson Truck Lines, Inc. |
| 3HSDJAPR9GN284195 | FTRUCK-10118 | Hendrickson Truck Lines, Inc. |
| 3HSDJAPR6GN030797 | FTRUCK-10135 | Hendrickson Truck Lines, Inc. |
| 3HSDJAPR9GN284214 | FTRUCK-10294 | Hendrickson Truck Lines, Inc. |
| 3HSDJAPRXGN030950 | FTRUCK-10293 | Hendrickson Truck Lines, Inc. |
| 3HSDJAPRXGN030706 | FTRUCK-10142 | Hendrickson Truck Lines, Inc. |
| 3HSDJAPRXGN750538 | FTRUCK-10117 | Hendrickson Truck Lines, Inc. |
| 3HSDJAPR0GN030715 | FTRUCK-10138 | Hendrickson Truck Lines, Inc. |
| 3HSDJAPR2GN030716 | FTRUCK-10137 | Hendrickson Truck Lines, Inc. |
| 3HSDJAPR1GN750539 | FTRUCK-10131 | Hendrickson Truck Lines, Inc. |
| 3HSDJAPR1FN725008 | FTRUCK-08662 | Hendrickson Truck Lines, Inc. |
| 3HSDJAPR6GN285532 | FTRUCK-10287 | Hendrickson Truck Lines, Inc. |
| 3HSDJAPR7GN285846 | FTRUCK-10274 | Hendrickson Truck Lines, Inc. |

# EXHIBIT "A"

3HSDJAPR0GN285087    FTRUCK-10284       Hendrickson Truck Lines, Inc.
3HSDJAPR1GN284899    FTRUCK-10290       Hendrickson Truck Lines, Inc.

# EXHIBIT "A"

# 19th Capital Group LLC and its assigns

EQUIPMENT SCHEDULE SERIES INV-0027192 - 12

This Schedule is executed pursuant to that certain Master Lease Agreement dated November 16, 2018 (the "Lease"; which is incorporated herein by reference). This Schedule, incorporating by reference the terms and conditions of the Lease, constitutes a separate instrument of lease effective March 12, 2020 (the "Effective Date"). To the extent of any conflict or inconsistency between the terms of this Schedule and the Lease, the terms of this Schedule shall prevail.

| VIN | Year | Make | Model | Residual | Start Date | Projected End Date* |
|---|---|---|---|---|---|---|
| 3HSDJAPR1FN725008 | 2015 | International | ProStar | $5,000.00 | | |

| VIN | Initial Term Rent | Basic Rent | Damage Waiver | Non-Trucking Liability | Prep Deposit | Deposit |
|---|---|---|---|---|---|---|
| 3HSDJAPR1FN725008 | $ 44.38 | $ 1,350.00 | | | $ .00 | $ .00 |

Base Term: 24 monthly payments after each Start Date

**\*Projected End Date as set forth above is contingent upon full and complete compliance with all of the terms and provisions, including without limitation payment obligations (and being current thereon), of this Schedule, the Lease, and documents related thereto. Such Projected End Date may be extended, in the sole discretion of the Lessor, if the terms and provisions are not completed.**

**Lessee acknowledges that the "VIN" and "Start Date" in the above table may be completed by Lessor subsequent to the execution of this Schedule ("Additional Information"). Lessee hereby approves the completion of such Additional Information and agrees that such Additional Information is accepted, valid, and binding.**

1.  EQUIPMENT. The Equipment leased hereunder shall be as set forth above.

2.  TERM. Upon and after the Start Date, the Equipment shall be subject to the terms and conditions provided herein and in the Lease. A full term of lease with respect to said Equipment shall commence on the first of the month following the Start Date and shall extend for 24 full monthly payments ("Term"). The Start Date shall be as provided above, and will be the earlier of the date the Equipment is delivered or received by Lessee (or its agent) or ninety-six (96) hours after the time Lessor notifies Lessee that said Equipment is available for delivery.

3.  RENT

# EXHIBIT "B"

(a)  During the period from the Start Date to the first of the following month (the "Interim Term"), the pro-rated daily rent for said Equipment shall be as specified above, and such Interim Term shall be in addition to the Term. The Interim Term Rent as provided above shall be due on or before the Start Date, and such Interim Term Rent shall be due to Lessor as provided in such invoice for Interim Term Rent or prior to the delivery of the Equipment, whichever is earlier.

(b)  From and after the Start Date, the rent for said Equipment during the Base Term of this Lease shall be as specified above. Rent payments shall be made, in advance, via ACH (or such other method as deemed reasonable by Lessor) on the first of each month or as soon as practicable thereafter for each month during the Base Term of this Lease. Any payment obligations of Lessee in the Lease or this Schedule shall be made in United States dollars.

(c)  ACH Authorization. Lessee hereby authorizes Lessor or its agent to initiate single or recurring electronic debit entries from a specified bank account held by a financial institution Lessee designates through the Automated Clearing House (ACH) network. Lessee hereby authorizes Lessor to initiate such debit entries in the amount of Lessee's Rent obligations, plus all other amounts due at the time not exceeding $100.00 (or in such other amount as Lessee may specify). Lessee further agrees that in the event the aforementioned debit entries are not completed, then Lessor may use any other payment method Lessee has provided, including but not limited to credit cards. Lessee shall reimburse, to the extent permitted by law, the Lessor for any bank fees, credit card fees, or any other fees incurred by Lessor in processing payment of Rent.

(d)  Deposit. A refundable security deposit for the Equipment in the amount as provided above ("Deposit") must be made to Lessor prior to the Start Date. Such Deposit will be held by Lessor as security until successful completion of the Term, and may be refunded to Lessee so long as Lessee is in full compliance with, and completes, the Lease, this Schedule, and any related documents. Lessor reserves the right to offset the Deposit return amount by any expense it incurs arising out of the Lease.

A deposit as indicated above shall be paid for each piece of Equipment before the Equipment will be sent through the shop and prepared for delivery ("Prep Deposit"). Lessor shall not begin prepping a piece of Equipment before the Prep Deposit has been paid. Lessor shall invoice Lessee for the Prep Deposit and such invoice must be paid within ten (10) business days. Equipment will not be held past ten (10) business days from the invoice date and failure to pay the invoice may result in termination of the Lease. The Prep Deposit shall be applied to the first month's rent.

(e)  Lessee may not operate the Equipment more than 10,000 miles in any single month ("Mileage Limitation"). If the actual miles on the Equipment exceeds the Mileage Limitation, then, in addition to all other rights and remedies under this Lease, Lessor will assess a surcharge of eighteen (18) cents per mile for all miles over the Mileage Limitation ("Surcharge"), and Lessee agrees to pay this Surcharge in addition to all other amounts due Lessor under this Lease. The Surcharge may be invoiced at any time, but in any event annually, and such Surcharge shall be due within five (5) days of such invoice. Lessee agrees that such surcharge may be included in the Rent owed by Lessee. Lessee shall not be entitled to a credit or carry forward if actual miles is less than the Mileage Limitation. Lessee shall maintain records and logs that illustrate accurate mileage run, and must provide such records and logs to Lessor or its agent at the end of each calendar quarter or as requested by Lessor or its agent if prior to calendar quarter end. The Surcharge on the Equipment, once paid, may be

**EXHIBIT "B"**

4.   DELIVERY AND CONDITION OF EQUIPMENT.

(a)   Delivery and acceptance of the Equipment shall occur upon the earlier of: 1) the Start Date.; 2) Lessee or its agents taking or being given possession of the Equipment, or 3) the execution of a delivery and/or acceptance certificate.

(b)   The Equipment will be delivered to Lessee AS IS, WHERE IS. Lessor disclaims any warranties, express or implied, as to the condition of the Equipment, including, but not limited to, any implied warranty of merchantability or fitness for a particular purpose. Lessor does not assume, or authorize any person to assume on behalf of Lessor, any liability in connection with the lease of the Equipment. Lessor's above disclaimer of warranties does not in any way affect the terms of any applicable warranties from the manufacturer of the Equipment.

(c)   Lessee may register and title the Equipment, as well as handle the initial Federal Highway Use Tax, prior to the Start Date. Lessee shall be responsible for the Administrative Charge, which includes titling, registration, Federal Highway Use Tax, and any documents fees, for each of the Equipment as provided in this Schedule (collectively, the "Administrative Charges") on or before the Start Date. Lessee acknowledges and accepts that Lessor may not register such Equipment until Lessor has received the Administrative Charges from Lessee, and that Administrative Charges are non-refundable regardless of whether Lessee has taken possession of the Equipment. Further, Lessor agrees to handle registration renewal and Federal Highway Use Tax, and Lessee agrees to pay the Administrative Charges immediately upon receipt of an invoice from Lessor, and Lessee acknowledges and accepts that such Administrative Charges may increase given changes in costs to registration or Federal Highway Use Tax and that Lessee will be responsible for paying any increases in the Administrative Charges. Other than as set forth above, Lessee shall pay (including any penalties or interest) for all permits, plates, licenses, fees, or taxes (such taxes shall include but not be limited to personal property taxes, sales taxes, use taxes, mileage or ton mileage taxes, fuel taxes, highway and bridge tolls, and any other taxes and fees) required by law and/or Lessee's business or now or hereafter imposed upon the operation or use of the Equipment. Lessee shall be solely responsible for paying for fuel taxes and handling any fuel tax reporting, and shall indemnify Lessor and its affiliates for such.

(d)   Lessee will be invoiced, at the reasonable market price per gallon as incurred by Lessor or its agent, for the cost of fuel residing within each piece of Equipment when delivery of the Equipment occurs as stated above. Lessee agrees to pay such fuel costs when due, as specified on the invoice, and the amount invoiced shall be considered an Other Payment, as defined in the Lease.

5.   LESSEE'S CONFIRMATION. Lessee hereby confirms and warrants to Lessor that the Equipment: (a) has been made available, accepted, and inspected; and (b) is a part of the "Equipment" referred to in the Lease and is taken subject to all terms and conditions therein and herein provided. Lessee hereby represents and warrants to Lessor that, as of the Effective Date, there is no Default or Event of Default under any Schedule or any other Lease Document (as such terms are defined in the Lease). All representations and warranties provided by Lessee in favor of

applied towards its residual if
i) the Equipment Schedule gives a Residual for the Equipment,
ii) there are no defaults under the Lease, and
iii) Lessee requests, in writing, the Surcharge be applied to the Residual in its notice to Lessor of its exercising of the purchase option. No Surcharge accrued on a piece of equipment may be applied to the Residual on another piece of equipment.

**EXHIBIT "B"**

Lessor in any of the Lease Documents shall be true and correct as of the Effective Date of this Schedule (Lessee's execution and delivery of the Schedule shall constitute Lessee's acknowledgment of the same).

6. TITLE; GRANTING CLAUSE.

(a) Lessee and Lessor intend that: (1) this Schedule, incorporating by reference the terms of the Lease, constitutes a true "Lease" and a "finance lease" as such terms are defined in Article 2A of the UCC ("Article 2A") and not a sale or retention of a security interest; and (2) Lessor or Lessor's creditor is and shall remain the owner of each item of Equipment (unless sold by Lessor pursuant to any Lease Document), and Lessee shall not acquire any right, title, equity, or interest in or to such Equipment except the right to use it in accordance with the terms of the Lease. Pursuant to Article 2A,

(b) In order to secure the prompt payment of the Rent and all of the other amounts from time to time outstanding with respect to the Lease and this Schedule, and the performance and observance by Lessee of all of the provisions hereof and thereof and of all of the other Lease Documents, and the payment and performance of all other indebtedness, obligations or liabilities of Lessee to Lessor or to any affiliate of Lessor, now existing or hereafter arising, Lessee hereby collaterally assigns, grants, and conveys to Lessor, a security interest in and lien on all of Lessee's right, title and interest in and to all of the following (whether now existing or hereafter created, and including any other collateral described on any amendment hereto; the "Collateral"): (1) (if contrary to the parties' intentions a court determines that this Schedule is not a true "lease" under the UCC) the Equipment described in this Schedule or otherwise covered thereby (including all inventory, fixtures or other property comprising the Equipment), together with all related software (embedded therein or otherwise) and general intangibles, all additions, attachments, accessories and accessions thereto whether or not furnished by the manufacturer; (2) all subleases, chattel paper, accounts, security deposits, and general intangibles relating thereto, and any and all substitutions, replacements or exchanges for any such item of Equipment or other collateral, in each such case in which Lessee shall from time to time acquire an interest; and (3) any and all insurance and/or other proceeds of the property and other collateral in and against which a security interest is granted hereunder. The collateral assignment, security interest and lien granted herein shall survive the termination, cancellation or expiration of this Schedule until such time as Lessee's obligations under the Lease, this Schedule and the other Lease Documents are fully and indefeasibly discharged.

(c) If contrary to the parties' intentions a court determines that this Schedule is not a true "lease", the parties agree that in such event Lessee agrees that: (1) with respect to the Equipment, in addition to all of the other rights and remedies available to Lessor under the Lease or hereunder upon the occurrence of an Event of Default, Lessor shall have all of the rights and remedies of a first priority secured party under the UCC; and (2) any obligation to pay Basic Rent or any Other Payment, to the extent constituting the payment of interest, shall be at an interest rate that is equal to the lesser of the maximum lawful rate permitted by applicable law or the effective interest rate which would result in the same payment terms.

(d) Lessee further acknowledges that Lessor may, with or without notice or consent of Lessee, sell or grant a security interest in the Equipment and in such event Lessee's rights in and to the Equipment shall be subject and subordinate to the interest and rights, including the right of possession, of any such purchase or holder of a security interest in the Equipment.

**EXHIBIT "B"**

(e)  Lessee acknowledges that a third party lender, and their respective successors, transferees and assigns ("Creditor") may possess an ownership or security interest in the Equipment subject to this Schedule, and the rights to proceeds, rental and other payments hereunder. Lessee also acknowledges and agrees that: (1) upon notice from Creditor it will make rental and other payments due hereunder directly to Creditor; and (2) it will not hold Creditor liable for performance of any of Lessor's obligations under this Lease, nor will it withhold any payments from Creditor on the account of Lessor's nonperformance.

7.  TAX INDEMNITY. Lessee hereby represents and certifies, under penalty of perjury, that, with respect to this Schedule and the Lease: (i) Lessee intends that more than fifty percent (50%) of the use of the Equipment is to be in its trade or business; and (ii) Lessee has been advised and hereby agrees that Lessee will NOT be treated as the owner of the Equipment for federal income tax purposes.

Lessee hereby agrees to indemnify Lessor pursuant to this Schedule and the Lease for any claims, losses, costs, damages, and expenses, of whatsoever kind and nature, including legal fees resulting from Lessee's breach of the above representation and certification. The obligations of Lessee under this Section shall survive the expiration or termination of the term of the Lease with respect to this Schedule.

8.  ADDITIONAL REMEDIES. (a) Upon the occurrence of an Event of Default, in addition to the remedies specified in the Lease, Lessor may: (1) proceed at law or in equity, to enforce specifically Lessee's performance or to recover damages; (2) declare this Schedule in default, and cancel this Schedule or otherwise terminate Lessee's right to use the Equipment and Lessee's other rights, but not its obligations, hereunder and Lessee shall immediately assemble, make available and, if Lessor requests, return the Equipment to Lessor in accordance with the terms of the Lease and this Schedule; (3) enter any premises where any item of Equipment is located and take immediate possession of and remove (or disable in place) such item (and/or any unattached parts) by self-help, summary proceedings or otherwise without liability; (4) use Lessee's (or their agents/affiliates) premises for storage without cost or liability; (5) sell, re-lease or otherwise dispose of any or all of the Equipment, whether or not in Lessor's possession, at public or private sale, with or without notice to Lessee, and apply or retain the net proceeds of such disposition, with Lessee remaining liable for any deficiency and with any excess being retained by Lessor; (6) enforce any or all of the preceding remedies with respect to any related Collateral, and apply any deposit or other cash collateral, or any proceeds of any such Collateral, at any time to reduce any amounts due to Lessor; (7) demand and recover from Lessee all liquidated damages and all Other Payments whenever the same shall be due; and (8) exercise any and all other remedies allowed by applicable law, including the UCC.

Upon the occurrence of the Event of Default described in Section 15(j) of the Lease, the remedy provided in Clause (7) above shall be automatically exercised without the requirement of prior written notice to Lessee or of any other act or declaration by Lessor, and any liquidated damages shall be immediately due and payable. If an Event of Default occurs and Lessor engages in repossession or other self help and takes possession of the Equipment with other property contained in, upon, or attached to the Equipment, Lessor may take possession of such property and hold it in Lessor's possession or in public storage for the account and at the expense of Lessee or dispose of such property with no further liability. Lessee shall indemnify Lessor and its successors and assigns for any claims or losses related to property contained in or on the Equipment when Lessor takes possession of such Equipment.

9.  OPTION TO RENEW. Provided that no Default or Event of Default has then occurred and is continuing, Lessee shall have the option to renew the Lease, at the expiration of the term of this Schedule, with respect to all but not less than all of the Equipment, on the terms and conditions of the Lease, upon sixty (60) days' written notice to Lessor and for a negotiated renewal term and rent as then agreed by the parties. Any Equipment

**EXHIBIT "B"**

10. OPTION TO PURCHASE. Provided that no Default or Event of Default has then occurred and is continuing, Lessee may have the option to purchase, upon the expiration of the term of the Lease with respect to this Schedule, or of any subsequent renewal term, if applicable, all but not less than all of the Equipment (unless agreed otherwise in writing) upon the following terms and conditions: If Lessee desires to exercise this option it shall give Lessor written notice of its intention to exercise this option to purchase at least sixty (60) days before expiration of the term of the Lease with respect to this Schedule. Thereupon, at the expiration of the term of the Lease with respect to this Schedule, Lessee shall pay to Lessor in cash any Rent due on that date plus the residual value for the Equipment so purchased, together with all taxes and charges upon sale.

11. DISCLAIMER. There is no restriction (either express or implied) on any disclosure or dissemination of the tax treatment or tax structure of the transactions contemplated by this Schedule or any documents executed in connection herewith. Further, each party hereto acknowledges that it has no proprietary rights to any tax matter or tax idea or to any element of the transaction structure contemplated by this Schedule; and each party hereto (and any employee, representative or agent of any party hereto) may disclose to any and all persons (without limitation of any kind), the Federal tax treatment and Federal tax structure of the transaction contemplated by this Schedule. This Section 11 is intended to cause the transaction contemplated by this Schedule to be treated as not having been offered under conditions of confidentiality for purposes of Section 1.6011-4(b)(3) (or any successor provision) of the Treasury Regulations promulgated under Section 6011 of the Code and Section 6111 of the Code and the Treasury Regulations promulgated thereunder; and shall be construed in a manner consistent with such purpose.

12. MISCELLANEOUS. Photocopies, facsimile transmission, transmission by electronic mail in "portable document format" (".pdf") form or other electronic transmission of signatures shall be deemed original signatures and shall be fully binding on the parties to the same extent as original signatures.

19th Capital Group LLC and its assigns

Lessor

By: _____ [SEAL]
Name: Katie McKnight
Title: Authorized Agent
Date:

Hendrickson Truck Lines, In

Lessee

By: _____ [SEAL]
Name:
Title:
Date:

**EXHIBIT "B"**

that is not turned in to Lessor when due will be assessed the daily Interim Rate Rent or the prevailing market rate (whichever is greater) for each day Lessee maintains possession or has not delivered such Equipment directly to Lessor.

# EXHIBIT "B"

| Ele # | Term | Start Date | End date | # of units @ 3/6/2020 | Matured | Total past due | Past Due Amount Pre Petition (Filing Date 11/27/19) | Past Due Period of Jan 26-March 31 (Lump Sum Payment) | Month on repayment plan for Past Due Amnts Through Jan 26 | Additional Monthly Payment |
|---|---|---|---|---|---|---|---|---|---|---|
| ELE-FL-03100 | 36 Mo | 10/1/2019 | 9/30/2022 | 28 | No | $ 189,000.00 | $ 113,400.00 | $ 75,600.00 | 29 | $ 3,910.34 |
| ELE-FL-03099 | 36 Mo. | 7/1/2019 | 6/30/2022 | 4 | No | $ 27,000.00 | $ 16,200.00 | $ 10,800.00 | 26 | $ 623.08 |
| ELE-FL-03070 | 36 Mo. | 6/1/2019 | 5/31/2022 | 35 | No | $ 201,250.00 | $ 120,750.00 | $ 80,500.00 | 25 | $ 4,830.00 |
| ELE-FL-02823 | 24 Mo. | 2/1/2019 | 1/31/2021 | 21 | No | $ 234,130.68 | $ 139,630.68 | $ 94,500.00 | 9 | $ 15,514.52 |
| ELE-FL-02575 | 24 Mo. | 3/1/2020 | 2/29/2022 | 1 | Renewal | $ 8,100.00 | $ 4,500.00 | $ 3,600.00 | 22 | $ 204.55 |
| | | | | 89 | | $ 659,480.68 | $ 394,480.68 | $ 265,000.00 | | |

# EXHIBIT "C"